Delivered January 20, 1891.

———

MADDOX BROS. & ANDERSON v. R. W. FENNER ET AL.

No. 2721.

1. **Titled Lands.**—To be entitled to the protection of the Constitution as *land titled* the land must be included within the lines of the patent or grant claimed as protecting it from location. If by a proper interpretation of the patent or grant it should be construed not to embrace the land sought to be located, the land can not be affected by the Constitutional prohibition. In that event it is not land titled within the sense of the Constitution.

2. **Calls in Patent—Course and Distance.**—Locations of surveys are governed:

1. By natural objects or boundaries, such as rivers, lakes, creeks, etc.

2. Artificial marks, such as marked trees, lines, stakes, etc.

3. Course and distance. It is conceded that course and distance may in some instances be entitled to have greater weight attached to them than is permitted by the general rule.

3. **Unmarked Line Called for.**—Whether or not course and distance shall yield to the unmarked line of another survey which is called for does not seem to be entirely settled, and probably no general rule on the subject can be safely announced.

4. **Surveys Presumed to Have Been Made.** — In the absence of evidence on the subject, the presumption must be indulged that the surveyor actually surveyed all of the lines called for by him in the field notes of any survey certified by him.

5.   **Unmarked Lines.**—When unmarked lines of adjacent surveys are called for, and when from the other calls of such adjacent surveys the position of such unmarked lines can be ascertained with accuracy, and when in the absence of all evidence as to how the survey was actually made there arises a controversy as to whether course and distance or the unmarked line of another survey shall prevail, we see no good reason why the survey line should not be given the dignity of an "artificial object" and prevail over course and distance.

6.   **Excess in Survey.**—Such excess (2719 acres in survey of 800 acres) has never been held by this court a ground for disregarding surveys actually made.   See facts *held* insufficient to require calls for adjacent unmarked lines of surveys to be disregarded in favor of course and distance, although the excess be so great.

APPEAL from Bee.   Tried below before Hon. H. Clay Pleasants.
The opinion gives a statement of the case.

*West & McGown,* for appellants.— 1.   The calls for course and distance in the Stevens patent are of superior dignity and ought to control its calls for unmarked prairie lines, which can be ascertained only by running the surveys called for out by course and distance from their beginning corners. Gerald v. Freeman, 68 Texas, 201; Booth v. Strippleman, 26 Texas, 436; McCown v. Hill, 26 Texas, 359; Fagan v. Stoner, 67 Texas, 286; Duff v. Moore, 68 Texas, 271; Boon v. Hunter, 62 Texas, 583; Oliver v. Mahoney, 61 Texas, 610; Bragg v. Lockhart, 11 Texas, 160.

2.   In order for defendant to extend his lines to the unmarked boundary lines called for in his patent, it was incumbent upon him to prove that the line so called for was actually established on the ground by the surveyor calling therefor.   Fagan v. Stoner, 67 Texas, 286; Duff v. Moore, 68 Texas, 271; Schaeffer v. Berry, 62 Texas, 705; Hubert v. Bartlett, 9 Texas, 97; Anderson v. Stamps, 19 Texas, 460.

3.   The presumption of law in this case is that the call for the adjacent surveys is a mistake, since to extend the lines to them would give an excess of nearly four times the area called for; and the beginning corner being well known, the survey ought to be established on the ground by course and distance from that corner.   Boon v. Hunter, 62 Texas, 583; Stafford v. King, 30 Texas, 271; Forbes v. Withers, 71 Texas, 307; Bigham v. McDowell, 69 Texas, 102; Davidson v. Killen, 68 Texas, 406; Robinson v. Doss, 53 Texas, 497; Jones v. Burgett, 46 Texas, 285; Ayers v. Lancaster, 64 Texas, 305; Jones v. Andrews, 62 Texas, 653; Davis v. Smith, 61 Texas, 18; Hawkins v. Nye, 59 Texas, 99; Castleman v. Pouton, 51 Texas, 84; Phillips v. Ayers, 45 Texas, 603; Barnard v. Good, 44 Texas, 639.

*Glass, Callender & Proctor* and *Stockdale & Proctor,* for appellees.—1.
The patent granted to Washington Stephens (or Stevens) in 1846 shows according to its face that the State granted to him all the land lying between the lines of the surrounding surveys for which the patent calls as the boundary lines of the land granted.   If some of these lines are in the

open prairie and can not now, after more than forty years, be identified by artificial objects (the mounds and stakes for which the patent calls) nor by any natural objects, or if an excess of land is found within the boundaries called for, these are matters that do not appear upon the face of the patent and do not change the fact that all the land within the boundaries called for is prima facie granted by the patent and is "land titled" within the meaning of the second section of the fourteenth article of the Constitution of the State, which prohibits locations upon such titled land. Const., sec. 2, art. 14; Winsor v. O'Connor, 69 Texas, 571.

2. Locations are prohibited upon "land titled" when the evidence of the appropriation is on the county records or in the General Land Office, or when the appropriation is evidenced by the occupation of the owner or of some person holding for him.

3. "Land is said to be 'titled' when a patent is issued which on its face is evidence that the State has parted with its right and conferred it upon the patentee. For reasons not appearing upon the face of the patent the grant may be void or voidable, but the land embraced in it is nevertheless 'land titled.'" Winsor v. O'Connor, 69 Texas, 576.

4. The controlling inquiries seem to be: Does the patent, judged by its own terms, cover the land? Do the records and official maps of the county or the records and maps of the General Land Office show that the land is appropriated? Or, is there an owner in possession claiming the land as covered by the patent? If these inquiries must be answered in the affirmative, the land is "titled" and location upon it is prohibited.

5. If patented surveys lying in the open prairie, calling for each other as boundaries and recognized by the official maps of the General Land Office and of the counties in which they lie as lying adjoining to each other, and in possession of claimants under the patents by actual enclosures upon the ground, are to be considered "land titled" only to the extent of the strict quantity called for, and if every strip or patch of excess is to be regarded as open to location, the result must be to create disturbance and promote litigation in all that large portion of the State which consists of prairie land, and must defeat the purpose for which the prohibition aforesaid was placed in the Constitution—the purpose of giving quiet and repose to titles held under patent from the State, and to leave to the State herself any correction she may deem proper of any errors that may have been committed in the issuing of such patents.

6. When a patent is issued which bounds the land granted by one or more lines of older surveys, the land described and bounded by the calls of the patent is certainly granted according to the face of that patent. If upon an inspection of the ground after many years it is found that some of the lines called for are in the open prairie and can not be identified because time has rotted the posts and leveled the mounds by which the original survey was marked, it must still be conceded that those lines

exist somewhere, and wherever they are they constitute the boundaries for which the patent calls, and all the land within those boundaries is, prima facie at least, granted by that patent and is "titled" land. Stafford v. King, 30 Texas, 257; Winsor v. O'Connor, 69 Texas, 576.

7. It was not incumbent on defendants to show that the survey for the Stevens grant was actually made and the lines called for were actually run and established upon the ground. On the contrary, the law assumes that the surveyor did his duty and that the survey was actually made as called for, unless the contrary is proved. Stafford v. King, 30 Texas, 257; Boon v. Hunter, 62 Texas, 588; Gerald v. Freeman, 68 Texas, 204.

8. It is to be presumed in the absence of proof to the contrary that the field notes of the survey as set out in the patent are correct, and that the surveyor found or made the marks for corners for which he calls. The corners which the appellants wish to disregard are some of them called for as marked by "post and mound" and some by "mound" only. The presumption of law is that they were so marked when the survey was made, and that the lines and corners could then be found by the marks called for, and that it could not be questioned that all the land within the calls of the survey was covered by the patent when it was issued in October, 1846. And we submit that the same land covered by the patent then must be held to be covered by it now, whether the marks can now be found or not. It must remain "titled," notwithstanding the obliteration of the marks. Stafford v. King, 30 Texas, 257.

*West & McGown*, in replication to brief of appellees.—After a careful consideration of their brief, we respectfully submit that appellees' counsel fail to make the distinction between the validity of a title or patent and the construction thereof—i. e., the determination of quantity of land conveyed. This case involves the construction of the Stevens grant—not the validity of that title. We insist that appellees are entitled to no more land than a proper construction of the calls in their grant as tested by the well known rules of law governing surveys will give them, and to that quantity their title is unquestioned. This distinction is clear and marked. The one is a question of title; the other a question of boundary. If the attack is made upon the title, the constitutional provision is squarely met. If the question is one of boundary or quantity, it has no application. Such is our conclusion after a careful consideration of that part of the Constitution invoked by appellees. Article 14, section 2, reads: "All genuine land certificates heretofore or hereafter issued shall be located, surveyed, or patented only upon vacant and unappropriated public domain, and not upon any land titled or equitably owned under color of title from the sovereignty of the State, evidence of the appropriation of which is on the county records or in the General Land Office, or when the appropriation is evidenced by the occupation of the owner or some person holding for him."

An analysis of this section shows that the law makers intended to protect certain lands from location. What lands? Those "titled or equitably owned under color of title from the sovereignty of the State." Two classes—(1) titled lands; (2) lands equitably owned under color of title. Winsor v. O'Connor, 69 Texas, 576; Day Land Co. v. The State, 68 Texas, 526. These two classes are clearly defined, and were so defined by our Supreme Court prior to the Constitution of 1876, and the presumption therefore is that the law makers used them in the sense given them by the courts of the land.

Titled lands are those to which there is a "regular chain of transfer from or under the sovereignty of the soil." By equitably owned under color of title is meant lands to which there is a consecutive claim of such transfer, without being regular, as if one or more of the memorials or muniments be not registered or not duly registered, or be only in writing, or such defect as may not extend to or include the want of intrinsic fairness and honesty, or when the party in possession shall hold the same by a certificate of headright, land warrant, or land script, with a chain of transfer down to himself. Rev. Stats., art. 3192. And in either class there must be a muniment of title; or, as the learned Chief Justice expresses it in the case of Winsor v. O'Connor, 69 Texas, 577, there must be some evidence of the right which a person has to property. But even when this evidence of the right to possess exists, its immunity from location is burdened with conditions. They are (1) that these evidences must be on the county records or (2) in the General Land Office, or (3) the party having this evidence of the right of possession must occupy the land in person or by some one holding for him.

To come under the constitutional provision the owner must be clothed with the evidence of the right to possess contemporaneously with one of the last named provisions. For, again quoting from Winsor v. O'Connor, supra, "when land is not titled the Constitution does not prohibit its location unless it be equitably owned under color of title from the sovereignty of the State." Nor does it in either event unless the provisions of the Constitution as to notice are complied with. Hanrick v. Dodd, 62 Texas, 75.

The object and policy of the law is to forever quiet, as between a stranger and an owner, the titles to lands in those persons who, holding under muniments of title, in good faith believe themselves the owners; and in such cases not only the dictates of common honesty and fairness but the construction placed upon the law by learned judges forbid any attack by an outsider upon the title in the claimants. And this is, as it should be, a guaranty of immunity from the annoyance and vexation of strangers. In the view that the titled land alone is protected and not that land which under a proper construction of the grant falls outside of it, we are borne out by all the authorities which after laborious research we have found on

like questions. In our own State we find but one such statute. Paschal's Digest, article 809, reads: "No certificate of land, land warrant, or evidence of land claim of any kind whatever shall hereafter be located upon any land heretofore titled or surveyed within the limits of the colonies of Austin; * * * and the Commissioner of the General Land Office is hereby prohibited from hereafter issuing a patent on any location hereafter made for any of the lands described in this act; and should any patent be hereafter issued for the same or a part thereof, contrary to the provisions of this act, the same shall be null and void." We find this act construed in the following cases, viz.: Summers v. Davis, 49 Texas, 553; Westrope v. Chambers, 51 Texas, 188; Truehart v. Babcock, 51 Texas, 177; Bryan v. Crump, 55 Texas, 14. In all these the subsequent locator attacked the validity of the prior grant and attempted, because of irregularities, to show that it was void, and the court held that though the grant was void it was under this act titled and not subject to location. It was not a question as to the construction of the grant. The validity of the grant itself was brought into question.

As to the construction of the provisions of the Constitution under discussion we find the following cases: Atkinson v. Ward, 61 Texas, 388; De Court v. Sproul, 66 Texas, 369; Day Co. v. The State, 68 Texas, 549; Winsor v. O'C unor, 69 Texas, 576; Adams v. Railway, 70 Texas, 252; De la Garza v. Cassin, 72 Texas, 442. In the first of these cases, Atkinson v. Ward, appellee claimed the land sued for through a survey made October 23, 1876, and patented to his assignor January 16, 1877. The appellant claimed by virtue of location made January 15, 1853, upon which no patent issued, the field notes having been withdrawn from the Land Office September 1, 1872, and never returned. The court held: "The evidence went to establish a forfeiture of right to the survey made under the Hicks survey (under which appellant claimed). But it is insisted that the location and survey patented to Brander (appellee's vendor) was in violation of the Constitution, which prohibited a location upon land already occupied by another, etc., * * * and that the patent was therefore void." The court quotes section 2, article 14, of the Constitution, and says: "We think that the inhibition against locating or surveying of titled land, or land equitably owned under color of title from the sovereignty of the State, was not intended to apply to such titles or appearances of titles from the State as the statute denounced in terms null and void—rights which were once inchoate and apparently valid titles, but which have been forfeited. * * * The Constitution meant to protect against locations and surveys titles which are colorably valid grants or titles from the State, but not to shield those who claim title under such facts as the State denounces as sufficient to vacate a previous appropriation of public domain, and to annul whatever right may have been previously acquired."

In De Court v. Sproul the attack was made upon the manner of procuring title—the title itself; and the court holds that the patent being only voidable is titled land and protected by the Constitution.

In the Day Land and Cattle Company v. The State the present Chief Justice, construing this provision, uses this language: "This provision doubtless had two purposes—one was to forbid the location of land certificates on other than vacant and unappropriated public domain, and the other was to declare what within the meaning of the section should not be considered vacant and unappropriated public domain. * * * The section further * * * declares that lands located * * * by virtue of valid land claims, or to which inchoate titles have been acquired, shall not be deemed vacant and unappropriated public domain on account of mere informality attending the acquisition which does not affect its legality."

In the case of Winsor v. O'Connor we respectfully call attention of the court to the fact that the syllabus is incorrect. That case defines titled lands thus: "Land is said to be titled when a patent is issued which on its face is evidence that the State has parted with its right and conferred it upon the patentee. For reasons not appearing on the face of the patent the grant may be void or voidable, but the land embraced in it is nevertheless land titled."

In these cases the doctrine is clearly established (1) that only lands held under some evidence of title are protected; (2) that a person acquires no right, equitable or legal, to the public domain except as it is covered by a proper construction of his grant. Then to what land has a person a title? To that which he claims his grant to cover, or to that which a construction of his grant under the principles of law as applied to surveys gives him? De Court v. Sproul, 66 Texas, 369; Hoofnagle v. Anderson, 7 Wheat., 212.

When his patent calls for 320 acres of land, can he enclose a league and claim title thereto unless his grant when construed covers the league? Or, as in this case, can the claimant hold 2719 acres instead of 800 as called for in his patent by merely asserting claim thereto without a construction of his grant? The proposition is its own refutation. We ask that he be limited to what his grant gives him. Winsor v. O'Connor, 69 Texas, 576.

The court must construe it to ascertain its legal effect. He has no title to land which this construction does not give. As to that not covered by his grant he is a trespasser upon the public domain; and no man can take advantage of his own wrong. Day Land Co. v. The State, 68 Texas, 549; De la Garza v. Cassin, 72 Texas, 442; Adams v. Railway, 70 Texas, 252.

As to whether a construction of the Stevens grant under the laws governing surveys will include the land in controversy, we refer the court to appellants' brief. Appellees' sole contention seems to be that "it is titled land and therefore protected from location." This is the first question for the court to decide; and having decided this in the negative, as we

believe it must do under the authorities and the reason of the law, we submit that the record does disclose that the surveyor was never on the ground when he located the Stevens grant. And that evidence is this:

1.   The third call of the survey is for 1900 varas; to go to the Hassell corner called for it will have to be extended 3276 varas.

2.   The survey never closes; the beginning corner is never reached on the last call.

3.   If the calls for other surveys are adhered to, the tract will contain four times its declared area.

The presumption of law where so great errors are found is that the surveyor was either mistaken or was never on the ground. And in either event the party who would hold to his calls—those calls being open prairie lines—must prove that the surveyor reached them. Fagan v. Stoner, 67 Texas, 286; Duff v. Moore, 68 Texas, 271; Boon v. Hunter, 62 Texas, 584, and other authorities cited under appellants' second and third assignments of error.

And because the land is not included in the Stevens survey and is not protected by the Constitution, appellants pray that this cause be reversed and rendered and they granted their writ of mandamus.

HENRY, ASSOCIATE JUSTICE.—Appellants instituted this suit, charging that the following described land was part of the unappropriated public domain of the State of Texas and subject to location and survey as such; that they had requested the defendant Fenner, as county surveyor of Bee County, to survey the same by virtue of a valid land certificate tendered him, which he had refused to do, and praying for the writ of mandamus to compel him to make the survey.

The land is described in their petition as follows:

"Beginning at a point on the east boundary line of the M. F. Lewis survey, the same being the southwest corner of a survey made for J. B. Robertson and the most northern corner of J. Sharp survey; thence south 70 east with the south boundary line of the said J. B. Robertson survey 2917 varas to the southwest corner of the William Ryan survey; thence east with the south boundary line of said William Ryan survey 1462 varas to the northwest corner of the Francisco Dietrich survey; thence south with the west boundary line of said Dietrich survey to the northeast corner of the A. P. Baker survey; thence south 60 west with the north boundary line of said Baker 3275 varas to the southeast corner of the J. W. Hassell survey; thence north 30 west with the east boundary line of said Hassell 1500 varas to the south line of the J. Sharp survey; thence north 60 east with the south boundary line of said Sharp to the southeast corner or the same; thence north 30 west with the east boundary line of said Sharp 2400 varas to the beginning; excluding the W. Stephens survey and any valid files and surveys previously made."

The defendants, among other defenses, pleaded that the whole of the land described in plaintiffs' petition was embraced by the patent to Washington Stevens issued in the year 1846, and therefore not subject to location.

The cause was tried without a jury and a judgment was rendered in favor of the defendants. The land granted to him is described in the patent to Stevens as follows: Beginning at the William Ryan southwest corner, and then " to run due east with the Ryan survey 1262 varas to the Francis Deitrich northwest corner, a post bearing from a live oak marked X north 10 east 106 varas; thence south with that survey 1350 varas to A. P. Baker's corner, a post and mound; thence with that survey south 60 west 1900 varas to Gilford Deen assignee's corner, a mound; thence north 30 west with said survey 1500 varas to corner, a post and mound; thence north 60 east 850 varas to J. Sharp's corner, a mound; thence north 30 west with said survey 2400 varas, a post and mound; thence south 70 east 2000 varas to J. Skidmore's southeast corner, a post and mound; thence south 950 varas to place of beginning;" containing 800 acres.

The statement of facts shows that plaintiffs had title to the land certificate and made application for a survey as alleged by them, and that the surveyor refused to make the survey for the reason alleged in the answer of the defendants, and that the defendant Ellis had title to the land conveyed by the Stevens patent.

The surveyor testified that "the plat marked Exhibit·B was a correct delineation of the W. Stevens survey as taken from the certified copy of the map of Bee County made in 1879 and furnished by the Commissioner of the General Land Office and in use in Bee County; that said map of Bee County shows no vacant land adjoining the W. Stevens survey, but shows the same as cornering with all the surrounding surveys as called for in the patent, and that the records of Bee County show no vacancy, as claimed by plaintiff; that exhibit B does not show the survey as it is on the ground, but 'exhibit A' does; that defendant Ellis has possession of all the land on which plaintiffs seek to locate, and had same long before 1887."

Exhibit B, referred to in the evidence, delineates the Stevens and surrounding surveys substantially as follows:  (See next page.)

Exhibit A represents the land as follows:

It was proved that there are no landmarks, natural or artificial, at the southeast or northeast corners of the Hassell nor on its east line, nor on the south line of the Sharp east of the northeast corner of the Hassell, nor marks natural or artificial at the southeast or northeast corners of the Sharp nor on its east line, nor on the east line of the Simmons, nor on

the southwest or southeast corner of the Skidmore nor on its south line; that there are no natural or artificial objects on the west boundary line of the William Ryan by which the Stevens survey can be identified upon the ground; that they are all open prairie calls which can only be established by surveys of the respective grants called for in the Stevens patent; that if the Stevens is platted according to calls for adjacent surveys it will contain 2719 acres; that in order to reach Hassell's southeast corner the distance is 3275 varas instead of 1900 as called for in the third call of the Stevens patent.

Substantially plaintiffs propose to limit the Stevens survey to its proper quantity of 800 acres as determined by the courses and distances mentioned in the patent, beginning at the southwest corner of the Ryan survey and following the order of the calls mentioned in the patent, and to appropriate all of the land in excess of the Stevens, when so limited, lying within the boundaries formed by surrounding surveys called for in the Stevens patent not previously appropriated by other surveys.

The contention of the defendants is that the courses and distances mentioned in the Stevens patent must be subordinated to its calls for contiguous surveys, which being done there is no vacant land subject to be located.

Appellees also in effect contend that even if a proper construction of the Stevens patent by adopting courses and distances should limit it to a survey containing 800 acres, still as the patent also calls for the surrounding surveys all of the land included between such surrounding surveys should be treated as coming within the terms of the Constitution reading, "All genuine land certificates heretofore or hereafter issued shall be located or patented only upon vacant and unappropriated public domain, and not upon any land titled," etc.

We do not think that if by a proper interpretation of the Stevens patent it should be construed not to embrace the land sought to be appropriated by plaintiffs, it can then be held that the question is affected by the constitutional prohibition. In that event it is not land "titled" within the sense of the Constitution.

Appellants successfully contend that unless the person who made the Stevens survey made a gross error as to the distance of the third call and as to the course of the seventh call, he could not have embraced within the lines of that survey all of the land included between the surveys called for.

They also contend that "where a patent calls for course and distance the claimant under the patent must be bound thereby, unless the patent in connection with the call for distance mentions natural objects, known objects, or recognized corners or lines which under the circumstances reasonably control distance as called for in the patent."

In the case of Stafford v. King, 30 Texas, 272, this court said: "It has often been said by this court that the general rules are that the location

should be governed, first, by natural objects or boundaries such as rivers, lakes, creeks, etc.; second, artificial marks, such as marked trees, lines, stakes, etc., and third, course and distance. Of all these indicia of the locality of the true line as run by the surveyor, course and distance are regarded as the most unreliable."

It is conceded that course and distance may in some instances be entitled to have greater weight attached to them than is permitted by the general rule.

Whether or not course and distance shall yield to the unmarked line of another survey which is called for does not seem to be entirely settled, and probably no general rule on the subject can be safely announced.

In the case of Gerald v. Freeman, 68 Texas, 201, it was proved that the lines which called for the unmarked line of another survey were actually run as the law required, and that the surveyor only assumed that he had found the unmarked line of the survey called for as the boundary line, and this court gave preference to the course and distance.

In this case we have no evidence that the lines of the Stevens and the adjoining surveys were not actually run. In the absence of evidence on the subject the presumption must be indulged that the surveyors actually surveyed all of the lines called for. The sketches from the Land Office introduced in evidence seem to furnish some evidence that the surveys were all made at or near the same time, and if they were the presumption is strengthened that the surveyor who made the Stevens survey knew where the lines of the other surveys called for by it were situated.

Except the Skidmore, we find nothing in the record to indicate that notwithstanding their being unmarked lines their position could not then have been ascertained with certainty. Indeed, there is nothing in the record tending to show that they may not be now ascertained with accuracy, notwithstanding neither their lines nor corners next the Stevens are marked. The Skidmore survey alone of the surveys called for in the Stevens patent seems from the recent Land Office sketch to be at a different place from where it was as placed by the maps formerly in use. As it is placed by the county and Land Office maps previously in use it too seems to be correctly called for in the Stevens patent. The same observations may be made about some other surveys not called for in the Stevens patent.

When unmarked lines of adjacent surveys are called for, and when from the other calls of such adjacent surveys the position of such unmarked lines can be ascertained with accuracy, and when in the absence of all evidence as to how the survey was actually made there arises a controversy as to whether course and distance or the unmarked line of another survey shall prevail, we see no good reason why the survey line should not be given the dignity of an "artificial object" and prevail over course and distance.

In thé case of Ragsdale v. Robinson, 48 Texas, 398, under a different state of circumstances, a call for a survey was decided to have precedence over a contradictory call for course and distance.

It seems to be conceded that the William Ryan southwest corner, which is the beginning corner of the Stevens, is well identified, and that the first call of the Stevens along the south line of the Ryan is also correct.

The calls of a survey may always be reversed, and if this be done in this case the last call in the Stevens patent, or the one 950 varas north from the William Ryan southwest corner, would be entitled to as much regard as the first or east call from that point. The effect of reversing the calls of the Stevens survey and assuming the last one to be correct, upon the survey of plaintiffs, has not been discussed by counsel and need not be by us. It is evident that the officer who made the Stevens survey did not discharge his duty accurately in every particular. His failure to do so is most strikingly shown by the quantity of the land included in the survey, if he actually ran the lines according to the surrounding surveys. Such excess, however, has never been held by this court a ground for disregarding surveys actually made.

In this case the greatness of the excess is not without force as an argument indicating that the surveyor actually intended to make the Stevens embrace all of the land left by the surrounding surveys. It is apparent that by an actual survey he would have been able to locate a survey of 800 acres in the vacancy beginning at the Ryan southwest corner in some regular shape, and that the irregular and peculiar shape given to the Stevens, as is evidenced by the calls of the patent, was adopted because he was acquainted with the boundaries of the surrounding surveys and intended to make a survey conforming accurately to them as they then appeared.

The judgment is affirmed.

*Affirmed.*

Delivered January 20, 1891.

*West & McGown,* and *Walton, Hill & Walton,* submitted and argued a motion for rehearing. The motion was refused.