## LUTHER STEUSOFF v. HUGH JACKSON.

Decided October 19, 1905.

**1.—Boundary—Call for Unmarked Line.**

It is not true without exception that a call for an unmarked line will not extend a call for course and distance, since where the unmarked line called for is also the line of another survey, it may under certain conditions be given the dignity of an artificial object.

**2.—Same—Presumption.**

Where there is no evidence as to how the survey was made, the presumption will be indulged that the surveyor ran out the lines of the adjoining surveys called for by him.

**3.—Same—Marked Line.**

 A line marked at the beginning and the end or along its course comes within the definition of a marked line.

**4.—Same—Calls for Adjoining Surveys, Course and Distance.**

 Case presented where calls for adjoining surveys are held to prevail over course and distance.

 *E. B. Pickett, Jr.,* for appellant.—The law presumes that the surveyor actually goes on the ground, and, in fact, measures the land, and where a party seeks to extend the boundaries of a survey beyond its apparent calls, and so as to contain an excess in acreage, he must show that the surveyor actually surveyed the same, and, in fact, located the lines where he contends they extend to. Stafford v. King, 30 Texas, 257; Gerald v. Freeman, 68 Texas, 203; Robertson v. Mooney, 1 Texas Civ. App., 379; Williams v. Winslow, 84 Texas, 377; Fagan v. Stoner, 67 Texas, 288.

 *C. F. Stevens* and *G. P. Dougherty,* for appellee.—Where the calls for a survey call for the unmarked lines of an adjacent survey, and when from the other calls of such adjacent survey the position of such unmarked lines can be ascertained with accuracy, the unmarked lines will be given the dignity of an artificial object, and in case of conflicting calls will prevail over course and distance. Maddox v. Fenner, 79 Texas, 279; Coleman Co. v. Stewart, 65 S. W. Rep., 383; Platt v. Vamillion, 99 Fed. Rep., 364; Wagner v. Daniels, 4 Texas Civ. App., 354; Wagner v. Daniels, 18 Texas Civ. App., 235; Angle v. Young, 25 S. W. Rep., 798; White v. Blumm, 99 Fed. Rep., 276.

 GILL, CHIEF JUSTICE.—This is a boundary suit, and the judgment of the trial court, sitting without a jury, was at the last term affirmed by this court without written opinion. It is necessary, therefore, to a proper understanding of what will be written upon this motion, that we state, at least in a general way, the nature of the controversy, and the facts which present the questions.

 The appellee brought this suit against the appellant in trespass to try title to recover about 820 acres of land alleged to be a part of the original Silas Smith league. Appellant defended on the ground that it was not included within the Smith boundaries, but was vacant land at the time he applied to purchase it from the State.

 The land in controversy lies immediately east of the east line of the T. D. Yoakum survey, and the validity of defendant's claim depends on whether the Smith field notes shall stop at the distance called for therein from the Spinks northeast corner, west toward the Yoakum, or whether the call for the Yoakum east line, as the western boundary of the Silas Smith, should prevail over course and distance. The following rough sketch, though not drawn to scale, will serve to indicate the situation: (The crosses indicate well-marked corners.)

The original field notes of the Silas Smith, dated June 9, 1840, are as follows: "Survey for Silas Smith of 19,677,657 10-100 square varas of land, situated on the headwaters of Turtle Bayou, east of and adjoining James McFadden's and B. Spinks' surveys, west of and adjoining Levy Barrow's survey, being a part of the quantity of land to which he is entitled by virtue of certificate number 65, issued by the Board of Land Commissioners for the county of Liberty; beginning on James McFadden's east boundary, 1,250 varas from his southeast corner, and where Weaver's north boundary intersects said line, a stake from which a pine 6 in. diam. mkd. 'X' brs. N. 58 W. 2 7-10 vrs. dis.; thence N. 1 W. with said line at 440 vrs., branch 3 vrs. wide, course S. 20 W., at 1,750 vrs. McFadden's northeast corner; thence S. 89 W. with his north boundary 1,123 vrs. to Spinks' southeast corner; thence N. 1 W. with said Spinks' east boundary 2,500 vrs. to his northeast corner; thence S. 89 W. with his north boundary at 760 vrs., branch 2 vrs. wide, course S., at 1,480 vrs. prairie, at 1,610 vrs. T. D. Yoacum's southeast corner; thence N. 1 W. with said Yocum's east boundary 1,960 vrs. to his northeast corner; thence N. 89 E. with the south boundary of Mary Hawley's survey 232 vrs. to her southeast corner; thence N. 1 W. with her east boundary 372 vrs., mound and post; thence east at 225 vrs. timber, at 270 vrs., a branch 2 vrs. wide, course south, at 2,370 vrs. prairie and road, at 4,035 vrs. mound and stake; thence south at 940 vrs. island of timber, at 1,280 vrs. road, at 1,490 vrs. timber, at 1,808 vrs. Levy Barrow's northwest corner on the south bank of the bayou, 3 vrs. wide, course south, at 6,011 vrs. said Barrow's southwest corner; thence east with its south boundary, at 2,340 vrs. prairie, at 2,470 road, at 2,505 vrs. corner, stake from which a wateroak 18 in. diam. mkd. 'X' brs. south 55 W. dis. 6 7-10 vrs., and another of the same kind 20 in. diam. mkd. 'SS' brs. S. 61 W. dis. 72 vrs.; thence south 450 vrs. corner, stake on the north boundary of Weaver's survey, 5 vrs. west of the previous road mentioned, leading to Annuhuac, from which a water-oak 15 in. diam. mkd. 'SS' brs. S. dis. 4 2-10 vrs., and a water-oak 18 in. diam. mkd. 'X' brs. S. 38 W. 11 3-10 vrs. dis.; thence S. 89 W. with said Weaver's survey, 3,895 vrs. to the beginning corner, four labors of this survey arable land, the remainder pasture."

The McFadden, Spinks and Yoakum surveys were all based on Trinity River, and extended eastwardly from its east bank. As indicated by the field notes of these various surveys, they all had well-marked and

well-identified corners on the river for both the north and south lines of each. The Robert Whitlock had not only two well-marked western corners, but its southeast corner was well-marked by a black-jack, which was shown to be yet standing.

The Hawley (or Mayfield) survey began at a well-marked corner on the north line of the Yoakum; thence ran easterly with Yoakum's north line 8,030 varas to mound and post in prairie; thence north 810 varas to southeast corner of Whitlock; thence west with Whitlock's south line to the Whitlock southwest corner; thence south 810 varas to the place of beginning. It thus appears that, by reason of the marked corners of the Whitlock, and its own marked starting point, three of its corners were marked, and the fourth, or southeast corner, by force of the calls, must have been as far east as the marked southeast corner of the Whitlock. The Hawley south line was fixed by its own marked southwest corner and the northwest marked corner of the Yoakum.

There is no controversy as to the location of the eastern lines and corners of the McFadden, Spinks, Yoakum, Hawley or Whitlock. The east line of the Yoakum is not mentioned in its field notes as a marked line. There is testimony, however, to the effect that there is an old marked tree on its east line. The Barrow, the Weaver, the McFadden, the Spinks, the Yoakum, the Hawley and the Whitlock surveys are older than the Silas Smith, and the field notes of the latter indicate in many ways a general purpose to cover the peculiarly shaped space between the surveys called for. Each of the older surveys is mentioned as a part of its boundary. The Smith field notes, starting at a fixed corner on the east line of the McFadden, follow with general accuracy the configuration of the western surveys until we reach the call for distance from the Spinks northeast corner to the Yoakum east line. The distance by actual measurement is greater by 2,055 varas than that called for. (The land in controversy is a strip of this width lying east of the east line of the Yoakum, and contains over 800 acres.) The calls then proceed to follow with general accuracy the southeast corner and the east line of the Hawley, and finally reaching the Barrow and the Weaver, cover a portion of the narrow strip between the two last-named surveys.

Appellant contends that the east line of the Yoakum is an unmarked line, and that in no case can the call for an unmarked line overcome or extend the call for course and distance. To our minds there is more than one answer to appellant's proposition. In the first place, it is not true, without exception, that a call for an unmarked line will not extend a call for course and distance. In Maddox v. Fenner (79 Texas, 291) it is said: "When unmarked lines of adjacent surveys are called for, and when from other calls of such adjacent surveys the position of such unmarked lines can be ascertained with accuracy, and when, in the absence of all evidence as to how the survey was actually made, there arises a question as to whether course or distance, or the unmarked line of another survey shall prevail, we see no good reason why the survey line should not be given the dignity of an 'artificial object,' and prevail over course and distance."

Another principle laid down in that case is that, where there is no evidence as to how the survey was made, the presumption will be in-

dulged that the surveyor ran out the lines of the adjoining surveys called for. The case was followed and these rules applied in Coleman v. Stewart (65 S. W. Rep., 383), Wagner v. Daniels (4 Texas Civ. App., 354, and 18 Texas Civ. App., 235), Groesbeck v. Harris (82 Texas, 411), Angle v. Young (25 S. W. Rep., 798).

We find the reasons for the application of these rules to this case stronger than in any case cited. In the first place, there is the general manifest intention to include the vacancy between the surveys named. This is made more evident when it is considered that the surveyor called for every angle and offset in any adjacent survey, thus showing a familiarity with their lines and strengthening the presumption that · he actually ran them out. It has already been indicated that the east line of the Yoakum could be located with absolute accuracy, and its true location was not disputed in this case. If it can now be so definitely ascertained as to preclude dispute, it is likely that sixty-five years ago it was even more easily and certainly defined. But to the same point must be mentioned the force of the call for the southeast corner and the east line of the Hawley. If it be conceded that the Hawley southeast corner was unmarked, it can not be questioned that the location of its eastern boundary was definitely established, for it ran as an extension of the well-marked eastern boundary of the Whitlock. Indeed, it may well be said that the Hawley southeast corner could be located with mathematical and geometric accuracy, for the south line ran a certain course easterly from the marked beginning corner, and its east line ran at right angles south from the marked southeast corner of the Whitlock. The intersection of these two lines would necessarily be the southeast corner of the Hawley, distance to the contrary notwithstanding, for the survey must close.

Now, the Silas Smith called to tie onto the Hawley as distinctly as for any other survey on the map, and made a part of its south and east line a part of its boundary. So, if the calls are reversed, and the Smith north line carried to the Hawley east line and southeast corner, thence following the calls for course and distance, the Yoakum east line is necessarily reached, and the closing call would be extended simply to close the survey. A reference to the map will illustrate the force of this view, hence we do not enlarge upon it.

We have no question but that a line marked at the beginning and the end, or along its course, comes within the definition of a marked line, and the rule appellants invoke never contemplated that, in order for a call for a line to overcome a call for course and distance, the very point at which the line called for is intersected by the projected line must be marked or indicated by some natural or artificial object. It is enough if, from a named and marked object intended to identify the line, the call for course will locate it.

The theory is not that, when the surveyor arrived at the point of contact, he actually saw at that point the marked line, but that, running it out from known and marked objects on the line itself, he was able to conclude with certainty that the point of supposed contact was the line called for. To all this is added the force of the facts that the county maps in use in that county have all indicated the east boundary of the Yoakum as the west boundary of the Smith. The

maps in the General Land Office since the date of the original survey have indicated the same state of affairs and suggested no vacancy.

The appellee claims under the original Silas Smith grant. The appellant claims under a recent location made upon the theory that there is a vacancy. Under the circumstances, and after the lapse of sixty-five years, we think either he, or the State from which he purchased, might well be required to do more than show a mere probability that the original surveyor made a mistake as to the location of the east line of the Yoakum rather than in his call for distance.

As against all this, and the fact that the Silas Smith is tied onto the Hawley east line, the appellants have shown that the original surveyor called at certain intervals for a little stream, described as a small branch three varas wide, and that, if appellants' theory of the case is followed, this branch is yet found at the distances called for in the field notes. Standing alone, there is a good deal of force in the fact, but one witness testified that at practically the same distance from the Hawley east line as that called for in the field notes there was a marked depression indicating that it had, in years past, been a ravine or watercourse.

We are of opinion there is ample evidence to sustain the judgment of the trial court. The motion is therefore overruled.

*Affirmed.*