(Court of Criminal Appeals of Texas. March 13, 1918.)

1. INTOXICATING LIQUORS ☞236(1)—ENGAGING IN BUSINESS OF SELLING—SUFFICIENCY OF EVIDENCE.
Evidence *held* to sustain conviction for engaging in business or occupation of selling intoxicants in a prohibition county.

2. CRIMINAL LAW ☞1090(19)—REVIEW—MOTION FOR CONTINUANCE.
Although appellant on motion for new trial complained of the overruling of his motion for a continuance, where he took no bill to the court's action, the ruling cannot be reviewed.

Appeal from District Court, Lamar County; Ben H. Denton, Judge.

Ben Morse was convicted of engaging in the business or occupation of selling intoxicating liquors in a prohibition county, and he appeals. Affirmed.

E. B. Hendricks, Asst. Atty. Gen., for the State.

PRENDERGAST, J. Appellant was convicted of engaging in the business or occupation of selling intoxicating liquors in Lamar, a prohibition, county, and assessed the lowest punishment.

[1] The proof shows that prohibition had been in force in Lamar county for three years before this prosecution was begun and at the time of the trial. The state proved four sales of intoxicating liquor by appellant from the latter part of September to some time in January following, and that during and before this time he had received through the express company eight distinct shipments of liquor, which he admitted receiving. The court in a proper charge, to which there was no complaint, submitted every issue aptly to the jury. The evidence was sufficient to sustain the conviction.

[2] There is no bill of exceptions. In his motion for a new trial he complains of the court overruling his motion for a continuance. He took no bill to the court's action; hence that question cannot be reviewed under the well-established law of this state. Appellant has filed no brief.

The judgment is affirmed.

DYE v. STATE. (No. 4877.)

(Court of Criminal Appeals of Texas. Feb. 13, 1918.)

Appeal from District Court, Collin County; M. H. Garnett, Judge.

Will Dye, alias Red, was convicted of theft, and he appeals. Affirmed.

E. B. Hendricks, Asst. Atty. Gen., for the State.

MORROW, J. Appellant was convicted of theft, and his punishment assessed at two years' confinement in the penitentiary.

The record contains neither a statement of facts nor bills of exception. In the absence of these, there are no questions raised that can be reviewed.

The judgment of the lower court is affirmed.

RED v. STATE. (No. 4902.)

(Court of Criminal Appeals of Texas. Feb. 13, 1918.)

Appeal from District Court, Smith County; J. R. Warren, Judge.

Phil Red was convicted of violating the local option law, and he appeals. Appeal dismissed, at defendant's request.

E. B. Hendricks, Asst. Atty. Gen., for the State.

DAVIDSON, P. J. Appellant was convicted of violating the local option law, and prosecuted an appeal.
The record is without statement of facts or bills of exception, and was submitted upon the record at the last session of this court. Since its submission, appellant has filed an application, properly certified and sworn to, asking the withdrawal of his appeal.
The application will be granted, and the appeal will be dismissed, at appellant's request.

FIELDS v. STATE. (No. 4896.)

(Court of Criminal Appeals of Texas. Feb. 13, 1918.)

Appeal from District Court, Nacogdoches County; L. D. Guinn, Judge.

Albert Fields was convicted of rape, and he appeals. Affirmed.

E. B. Hendricks, Asst. Atty. Gen., for the State.

PRENDERGAST, J. Appellant was convicted of rape, and appealed.
There is no statement of facts, nor any bills of exception, and nothing presented which can be reviewed in the absence of these.
The judgment is affirmed.

WILSON et al. v. HUTCHESON. (No. 7430.)

(Court of Civil Appeals of Texas. Galveston. Dec. 14, 1917. Rehearing Denied Feb. 7, 1918.)

JUDGMENT ☞720—CONCLUSIVENESS—BOUNDARIES.
Where a decree dividing land between the owners contained a call for distance, and also incorporated therein prior partition deeds and a subdivision map, *held*, the distance call could not be selected from among such descriptions, so as to render the decree conclusive as to adjoining tract's common boundary line.

Appeal from District Court, Harris County; Wm. Masterson, Judge.

Suit by J. C. Hutcheson against H. T. D. Wilson and others. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

Harry Holmes and Ross & Wood, all of Houston, for appellants. J. C. Hutcheson and

Hutcheson & Hutcheson, all of Houston, for appellee.

GRAVES, J. This is a boundary suit, involving the true location on the ground of the west line of the lower A. Miles tract in the Harris & Wilson two-league grant in Harris county, Tex.; appellants owning upon the west and appellee upon the east of that line. Appellee, who was plaintiff below, sued appellants for a part of this A. Miles tract, describing it in his petition as follows:

"Beginning at an iron stake set in the south side of the Wallisville road, the same being the northwest corner of the A. Miles tract of land, and the northeast corner of the James T. D. Wilson tract, as the same was described and set apart to the said James T. D. Wilson by decree of the Circuit Court of the United States in the suit of Glenn M. Harris v. James T. D. Wilson et al., C. L. 1476, which decree is recorded in Volume 49, page 68, of the Deed Records of Harris county, Texas, which said corner is the beginning corner of the land herein sued for, and which said beginning corner is 1,062 varas west from the northeast corner, being located on the east line of the Harris & Wilson two-league grant about 100 feet north of the northwest corner of the John Brown league on the east line of the said Harris & Wilson survey, and the said northeast corner being marked by a stake set in said east line at a point where the Wallisville road crosses same, and also marked by a wire fence, which corner is at said stake in said road.

"Beginning at said iron stake as fixed for the northwest or beginning corner of the land herein sued for, as described above, plaintiff's west line runs thence south with the east line of the tract decreed and set apart to James T. D. Wilson by the decree above referred to and parallel with the east line of the Harris & Wilson survey, as above described, and 1,062 varas therefrom, for a distance of 2,474.3 varas, or 6,873 feet, at which a stake is set for corner marking the southwest corner of the tract herein sued for, said corner also being the northeast corner of the Norton or Knowslar tract as the same is described in the Deed Records of Harris county, Texas, in Book D, page 169, conveying said tract to C. C. Norton, and which corner is also an interior corner of the James T. D. Wilson tract as set apart and described in said decree of the federal court above referred to, which said corner is 618 varas east of the northwest corner of the Norton or Knowslar tract, and 1,062 varas west of the east line of the Harris & Wilson two league grant; thence running east, parallel with the Wallisville road and with the north line of the A. Miles tract, a distance of 150 varas, for the southeast corner of this survey; thence north, parallel with the west line of this tract heretofore described, to the north line of the A. Miles tract on the Wallisville road; thence west, with the south line of the Wallisville road, to the northwest corner of this tract, the place of beginning."

His contention was that the location of the land he sued for was dependent alone upon the location on the ground of the northeast corner of this A. Miles tract, which it was asserted was in fact where his quoted description placed it; that such was the only fact issue in the case, and that the length of the north line, or the width, of the A. Miles tract, had been conclusively settled and adjudicated to be 1,062 varas from its northeast corner by the federal court at Galveston in the case of Harris v. Wilson, referred to in this description. The trial court sustained this theory of the case, refused to admit any evidence of the possible location of the west line of the Miles at any other or different place than 1,062 varas west from its northeast corner, and submitted to the jury the sole question as to whether this northeast corner was located on the ground as claimed by the one or the other of the litigants. Upon the jury's answering that they found it located where appellee claimed it to be, judgment was entered in his favor against appellants for the land sued for, from which they prosecute this appeal.

The appellants contended below, and tendered voluminous evidence in support of it, that the location of the disputed line which separated their land from appellee's—that is, the west line of the lower A. Miles tract—was not at all dependent upon the location of its northeast corner, but by the very muniments of his title, as well as by the judgment of the federal court in Harris v. Wilson, invoked and relied upon by appellee, was made dependent upon two other well-known tracts in the Harris & Wilson two leagues, namely, what were designated as "the 160-acre reserve" and the C. C. Norton or Knowslar 192½ acres; that therefore the only fact issue submitted to the jury was wholly immaterial, and its determination had nothing to do with the main issue in the case, which was:

"Where is the dividing line between the lower A. Miles and the lower Franklin or Wilson tract?"

The court having rejected their contention and excluded all their proffered evidence, charges, and other tendered means of having them passed upon by the jury, they duly preserved their right to complain through exceptions and otherwise, and have by appropriate assignments and procedure here properly invoked this court's authority to review that action.

We think the position of appellants was correct, and that the trial court erred. In aid of a clearer appreciation of the issues raised, we attach a map of the subdivision of the Harris & Wilson survey made in 1861 by its then owners, B. C. Franklin and A. Miles, by J. L. Latham, his attorney in fact, showing the "160-acre reserve" at the junction of the two railroads, and the C. C. Norton or Knowslar 192½ acres at the lower end on Buffalo Bayou, and between what are elsewhere herein referred to as the lower A. Miles and B. C. Franklin, or Wilson, tracts; the land sued for in this suit lay in the northwest corner of this lower A. Miles, in the form of a long, narrow parallelogram, 150 varas east and west by 2,474.3 varas north and south, the approximate position of which

we have taken the liberty of indicating on the map by dotted lines of our own.

Back in 1839 these two joint owners, as their first conveyance of any of the property, had sold to C. C. Norton his 192½ acres, which subsequently passed to Knowslar, and then, by this subdivision of 1861, which was also a partition by deed between them, they had divided the balance of the survey between themselves according as their names appear upon this copied map, except that the "160-acre reserve" and also a small 20-acre tract in the southeast corner of the survey, the latter not sufficiently material here to require further mention, were left in common ownership for future disposition. By their joint deed to Norton, in describing this 192½ acres, they had tied it to the east side of Buffalo Bayou, reciting that it comprised lots 6, 7, and 8 according to a prior plat and survey made by Darius Gress, aggregating 115½ acres, and 77 acres lying in the rear of these lots, surveyed by F. Jacob Rothaus on April 22, 1839. With the Norton tract having been thus conveyed and described 22 years before, when they later came in 1861 to partition and segregate to each his part of their remaining holdings, and to first set apart the 160 acres reserved for continuing common ownership, as one of the bases upon which to make division of the balance, they thus described the reserve tract:

"In order to ascertain the beginning, run a line parallel with the back line of the said two leagues from or through the point where the lines of the Tyler Railroad and the Gentry or New Orleans Railroad cross or intersect each other, to the west line of the said two leagues, on this line 1,680 varas east of said boundary line is the beginning point; thence south 537½ varas, establish a corner; thence east 840 varas; thence north 1,075 varas, establish corner; thence west 840 varas, establish a corner; thence south to the place of beginning."

This brings us to what we deem the decisive feature of this record; for these two joint owners, Franklin and Miles, having thus set apart the 160-acre reserve and tied it to the meeting point of the two railroads crossing it, which was surely no uncertain anchorage, then further provided in the deed that the remainder of the land should be divided into two divisions, to be known as the first and second divisions, and that the dividing line between the two divisions should begin at the southwest corner of the reserve, and should then run east to the east boundary line of the original grant, the land lying south of the line to be known as "Division No. 1," and the land lying north of the line to be known as "Division No. 2." The land lying south of the division line, being tract No. 1, was to be subdivided into two tracts, as follows:

"Beginning at a point on said division line (south line of 160-acre reserve extended east), from which a line drawn south will strike the northeast corner of the 192½ acres conveyed to C. C. Norton as aforesaid. That portion of the land hereinbefore described held now in common which lies south and west of said division line is set apart to Benjamin C. Franklin, to be held by him henceforth in severalty and separate ownership. That part or portion of said land south and east of said division and subdivision lines is set apart to Augustus Miles, to be henceforth held by him in severalty and separate ownership."

As is indicated on the above map, the east part of division No. 1 was assigned to Miles, and has since been known as the lower Miles tract, to distinguish it from a tract awarded to Miles out of the north end of the survey, or division No. 2, and the west part of division No. 1 was awarded to Franklin, and has since been known as the lower Franklin tract, and later on as the Wilson tract.

The location upon the ground of the line so referred to in this partition deed as the line dropped south from such a point on the division line as to strike the northeast corner

of the C. C. Norton 1921½ acres is the west line of the lower A. Miles tract, and constitutes the main, if not indeed the sole, issue in this case. That this definite, accurate, and original call for it in appellee's title furnished the proper criterion for its actual location, we have no doubt; and this, despite the recitation as to 1,062 varas appearing in appellee's description of the tract he sued for, because the evidence disclosed that there was not in the title to the Miles tract, nor in any conveyance or muniment of title into and under which appellee ·claimed, any call placing the west line of that tract, or of his land, at 1,062 varas from its east line; and that the only way that call for 1,062 varas got into his chain of title was by appropriating it from the decree of the federal court in the Harris v. Wilson Case, above mentioned, which judgment was rendered April 7, 1890. But that recitation, as there used, was not in description of the A. Miles tract, out of which appellee claimed, but of another and different tract, the one there adjudicated to James T. D. Wilson, lying north and west of the Miles, and described, so far as material, as follows:

"Beginning at the S. W. corner of the 160-acre reserve tract in the said two-league grant; thence east to the S. E. corner thereof; thence north to the center of the Texas & New Orleans Railroad track; thence northeastwardly, along said railroad track, to its intersection with Hunting Bayou in the east line of said two-league grant; thence south, along the east line of said two-league grant, *to the N. E. corner of the A. Miles tract; thence west 1,062 varas to the N. W. corner of said Miles tract;* thence south to the N. E. corner of the C. C. Norton or Knowslar 192½-acre tract."

The court, however, in that decree, did not stop with that description, but went further, and made the partition of 1861 between Franklin and Miles, and the above-copied subdivision map thereto attached, as much a part of its judgment as if that agreed division had been originally made by such judgment. James T. D. Wilson, to whom the tract just referred to was adjudged, was the predecessor of appellants in title to the land in lower B. C. Franklin tract lying west of the dividing line between it and the lower Miles tract and north and west of the C. C. Norton tract, but not to any land within this last-mentioned tract.

In these circumstances, we think that the call selected by appellee out of the other calls contained in the description of the lands awarded J. T. D. Wilson in the decree in the case of Harris v. Wilson, and which call from the east line of the Harris & Wilson survey read, "Thence west 1,062 varas to the northwest corner of· said Miles tract," etc., was ·not an adjudication that the northwest corner and the west line of the Miles tract were located 1,062 varas from the east line of the Miles tract, nor that the distance between the east and west lines of the Miles tract was 1,062 varas; but, on the contrary, that such call was only a descriptive term among the many other descriptive elements employed in the judgment for the purpose of describing the tract awarded to Wilson, having no greater, if indeed it was of equal dignity with others of such calls, and that appellants were not precluded and estopped from showing a different location and distance. So concluding, we sustain appellants' first two assignments, reading as follows:

"The court erred in ruling and holding that the judgment in the case of Harris v. Wilson et al. conclusively fixed and established the northwest corner and the west line of the lower or southern A. Miles tract of land at a distance of 1,062 varas from the northeast corner of the said A. Miles tract, and that the said call for distance of ·1,062 varas was an adjudication as to distance between the east and west lines of the said A. Miles tract, and that the defendants were estopped and precluded from showing ·that the west line of the A. Miles tract, or its northwest corner, was located at any other point on the ground than 1,062 varas; plaintiff's chain of title, and the conveyances to him, and the decrees of the court to which he was a party, calling for said corner to be at a point from which a line dropped south would fall upon the northeast corner of the Norton or Knowslar tract.

"The court erred in refusing to permit the defendants to offer any evidence as to where the northwest corner of the A. Miles tract and the west line of the miles tract were located upon the ground, or offer any evidence as to where the Norton or Knowslar tract of land was located; the evidence in this case and the deeds and conveyances to plaintiff, and the decrees and plats in the case of Harris v. Wilson and in Jones, Guardian, v. J. C. Hutcheson et al., showing and calling for the northwest corner of the Miles tract to be located at a point on a dividing line from which a line dropped south would fall upon the northeast corner of the Norton or Knowslar tract."

Upon the same considerations, we must likewise sustain those further assignments challenging a similar holding of the trial court with reference to the conclusive character of descriptive calls, to the same practical effect, contained in the judgment in this last-mentioned case of Jones, Guardian, v. Hutcheson, also invoked by appellee as being res adjudicata upon the question of the location of the west line of his land. Wood v. Cahill, 21 Tex. Civ. App. 38, 50 S. W. 1071; Goodson v. Fitzgerald, 135 S. W. 696; Steusoff v. Jackson, 40 Tex. Civ. App. 328, 89 S. W. 447; Thatcher v. Matthews, 101 Tex. 122, 105 S. W. 317; Maddox v. Fenner, 79 Tex. 290, 15 S. W. 237. If the legal effect of the two judgments was not such as appellee contends it was, and did not amount either to a conclusive adjudication or an estoppel against appellants, then his contention in this court that estoppel arose from alleged agreements as to the position of these disputed lines must likewise fall, because based and dependent upon the same recitations in those judgments. There was no independent issue of agreed boundary lines involved in the trial in the court below, since that court, by its previously recited action, took all other issues than the location of the northeast corner of the lower A. Miles tract, that one necessarily included, from the jury.

Since the first two assignments present the·

controlling question in the case, the determination of which disposes of the merits of this appeal, it becomes unnecessary to discuss in detail the great number of remaining assignments. We have, however, carefully read and considered them all, and conclude that, if they point out any material errors not disposed of in our conclusions upon the assignments sustained, they are not such as are likely to occur upon another trial. We deem it proper to further say, however, that throughout this opinion we have spoken of the dividing line between the lower Franklin and Miles tracts as being *the line* in dispute between the parties, under the view that the north line of the lower Miles was not really in dispute, since its location was fixed by the partition deed and plat of 1861 as being coincident with the south line of the reserve 160 acres, and, if it was, that the location of the west line of this Miles tract in the only way that could properly be done would necessarily locate it also.

For the errors indicated, the judgment is reversed, and the cause remanded.

Reversed and remanded.