**KIRBY LUMBER CORPORATION et al., Appellants,**

v.

**Earl LINDSEY et al., Appellees.**

No. 6894.

Court of Civil Appeals of Texas.

Beaumont.

Sept. 5, 1968.

Rehearing Denied Oct. 2, 1968.

Fountain, Cox & Gaines, Walter B. Morgan, Houston, for appellants.

John T. Lindsey, Port Arthur, for appellees.

STEPHENSON, Justice.

This is an action in trespass to try title involving a boundary dispute and limitation title. Trial was by jury and judgment was rendered for defendants upon the issues as found by the jury. The parties will be referred to here as they were in the trial court.

Kirby Lumber Corporation, owner of the surface estate in Liberty County School Land Survey No. 9, Tyler County, hereinafter referred to as "Liberty 9", brought this suit against the heirs and assignees of J. O. Lindsey, patentee of East Texas Railroad Section No. 2, Tyler County, hereinafter referred to as "Railroad 2". Humble Oil & Ref. Company, owner of 95% of the oil, gas and other minerals under Liberty 9 was impleaded and answered, aligning itself with plaintiff.

A copy of plaintiff's Exhibit No. 1 is included in this opinion so the points of error, and the discussion of the evidence may be understood.

SCALE 1½"=1,000 VRS

The land in dispute is approximately 70 acres shown on the above plat as cross-hatched and cornered by points 1, 2, 3 and 4. The location of the east line of Railroad 2 is agreed upon, but the problem is in locating the west line of Liberty 9, the senior survey to Railroad 2.

Plaintiff's first series of points attack the findings of the jury that the west line of Liberty 9 is located between points 1 and 2 and not between points 3 and 4, as shown on plaintiff's Exhibit No. 1. There are both no-evidence points and points that such findings are contrary to

the preponderance of the evidence. We consider only the evidence favorable to such findings in passing upon the no-evidence points.

Liberty 9 was surveyed by N. Magruder in 1844, and Railroad 2 was surveyed by John McBride in 1870. It is agreed that Liberty 9 was not an office survey. It is admitted by plaintiffs that it was assumed through the years until the 1950's that the west line of Liberty 9 and east line of Railroad 2 was a common line between them. The McBride Survey of Railroad 1, also made in 1870, began in the south line of the Macomb Survey at a stake for the northwest corner of Liberty 9, thence south with the west line of Liberty 9, 1900 varas for the southeast corner of Railroad 1. McBride's Survey of Railroad 2 began in the west line of Liberty 9, at the southeast corner of Railroad 1, thence south with the west line of Liberty 9, 1900 varas for the southeast corner of Railroad 2.

Norman Coats, a surveyor called by defendants, testified as follows: That he surveyed in the area of Liberty 9, the Railroad Sections and the Macomb, first in 1953 and 1954 and several times since. In his first survey of the Macomb (which is the senior survey to all surveys mentioned in this suit [1839] and lies north of Liberty 9) he located the south line and both points A and B, as shown on the above plat. He ran the east, south and west lines of Railroad 1. He found an old blazed line on the ground on the east line of Railroad 1 which ran to the northeast corner of Railroad 2, which is marked as point 1 on the plat. At point 1, he found evidence in the form of pine stumps which he took to be the witness trees called for by McBride in his original survey in 1870. He ran the east line of Railroad 2, shown as the line between points 1 and 2 on the plat, and found the distance to be 1936 varas, or an excess of 36 varas over the distance called for by McBride in his original survey. He found evidence of a line between points 1 and 2. He found

evidence of rich pine stumps called for as witness trees by McBride at point 2. He ran the east line of Railroad 13 from 2 to W and found a concrete monument at W. He surveyed the south line of Liberty 9 in 1961 and found the line between D and W to be 4,935.46 varas, which is about 65 varas short of the Magruder distance call which was 5,000 varas. He found the distance between W and Y to be 215.1 varas, which would make the distance 150.56 varas in excess of the Magruder distance call. He would accept W as the southwest corner of Liberty 9 based on recognition and acceptance by other people. He found nothing between X and Y that indicated an old line. He found a continuous line between Z and W on the ground.

John T. Lindsey, one of the defendants, testified as follows: He was one of the sons of the J. O. Lindsey who was the patentee from the State of Texas (1905). That the J. O. Lindsey Survey was the same land as described in Railroad 2. The J. O. Lindsey was resurveyed by Willie Neal in 1905. He was with Willie Neal at the time the survey was made. Willie Neal began the survey at the northeast corner of Railroad 2 at point 1 on the above plat. They located a stake at that point and located the bearing trees described in the field notes. There were crosses, blazes and hacks on a marked line at point 1 to indicate that point was in the west line of Liberty 9. They found marked lines on the north, west, south and east lines of Railroad 2, and located all four corners. That the Lindsey family lived on the Railroad 2 survey for 2 or 3 years before this survey was made in 1905. His father and mother moved in 1915 and he moved about 1917. He has been on the land many times each year since 1919. From the first time the Lindseys moved onto the Railroad 2 survey, there has never been any other line marked as the east line of Railroad 2 except the one shown on the plat as 1 to 2. It has been his understanding that the east line of Railroad 2 and the west line of Liberty 9 were one and the same line. They found marked

lines on the ground from 2 to W and from 1 to Z. The timber was cut clean from one end of the J. O. Lindsey to the other. Cutting was done up to the boundaries described. People who claimed to own Liberty 9 cut the timber up to the line Z to W from the middle 20's to 1930 or 1931. Kirby Lumber Company built the roads and did the logging. He had never heard of anyone claiming to own the land involved until this suit was filed in 1964. Timber has been sold by him and other defendants in this suit at later times. His mother and he each executed timber deeds to Kirby Lumber Company dated May 28, 1929, covering land on the east side of the J. O. Lindsey Survey. The timber deed from his mother to Kirby contained a description of a tract of land beginning at the northeast corner of Railroad 2 and the west boundary line of Liberty 9, thence south with the east line of Railroad 2 and west line of Liberty 9.

Defendant, Burns Gardner, testified to the following: He was 65 years of age and had lived near the land in question since 1911. He had been on this land many times. He knew where the point W was located on the ground and was familiar with the line from W to 2 and 1 to Z. He knew where the corner in the Macomb was located. This line from W to Z was marked with hacks and blazes. During the past 40 years while he was on the land, he did not find a marked line between 3 and 4. He knew that Kirby Lumber Company cut the timber off of Liberty 9 several times and cut up to the marked line Z to W but did not cut over it.

■ All of this evidence supports the finding by the jury that Z to W was the west line of Liberty 9. In the absence of evidence to the contrary, it must be presumed that Magruder ran the west line of Liberty 9 on the ground at the time of his survey in 1844, and that McBride ran the east line of Railroad 2 at the time of his survey in 1870. It must further be presumed that when McBride described his survey of Railroad 1 as beginning at the

northwest corner of Liberty 9, and going south with the west line of Liberty 9 that he knew where the corner and line were situated. The same presumption is true when McBride surveyed Railroad 2 and stated he began in the west line of Liberty 9 and went south with such line. Maddox v. Turner, 79 Tex. 279, 15 S.W. 237; Leone Plantation v. Raoch, Tex.Civ.App., 187 S.W.2d 674. There is another well established rule of law that when a survey cannot be located on the ground from any natural or artificial objects called for in the field notes, the proper way to locate it is by the course and distance calls from the nearest recognized and established corner. Teal v. Powell Lumber Co., Tex.Civ.App., 262 S.W.2d 223, and cases cited. All parties recognize D as the southeast corner of Liberty 9. The call distance from D to W is only 61.81 varas short as compared to the excess of 153.29 varas from D to Y. The no-evidence points are over-ruled.

■ In passing upon the points of error that such findings of the jury are contrary to the weight and preponderance of the evidence, we consider the entire record. There is much evidence that the west line of Liberty 9 should be X to Y. The surveyor, Joe Savage, who began surveying in the area in 1949, testified he found pine stumps located at the places corresponding to the witness trees called for by Magruder at both X and Y. John Hunter, another surveyor called by plaintiffs, found pine stump holes located at the same places in 1952. McBride in surveying Railroad 1 called for the northeast corner to be 200 varas from point B, while on the ground it is 404.46 varas. McBride marked new witness trees at the northeast corner of Railroad 1, and did not mention the Magruder witness trees. X to Y bears a closer relation to the west line of the Wagner survey than W to Z. This, together with other evidence, did not establish X to Y as the west line of Liberty 9 as a matter of law. This evidence merely raised a question of fact for the jury to

determine, which it did, favorably to defendants. The points are overruled.

Defendants have four points of error complaining of the manner in which this case was submitted to the jury. We have concluded the trial court fairly submitted the controlling issues to the jury as required by Rule 279 Texas Rules of Civil Procedure. In any event, we find no reversible error under Rule 434 T.R.C.P.

In view of our ruling as to the first points of error, those in reference to limitation title are immaterial, and we do not find it necessary to pass upon them.

Affirmed.