W. T. WAGGONER ET AL. v. T. W. DANIELS ET AL.

Delivered February 19, 1898.

**1. Survey—Conflicting Calls.**

A call in a survey for the unmarked lines of surrounding surveys is not overcome by the mere fact of excess in distance and in the quantity of land called for.

**2. State School Land—Actual Settler.**

One can not be an actual settler on State school land without actually residing on it, although he may be occupying it preparatory to and with the bona fide intention of thereafter removing to and residing upon the land as his home.

**3. Same—Possession and Settlement.**

An erroneous instruction in trespass to try title to school land, authorizing a recovery by plaintiff upon insufficient proof of actual settlement is not rendered harmless by the fact that the State intervened in the action and failed to recover, as defendants were entitled to possession of the land, it being vacant, as against every claimant except the State.

APPEAL from Wichita. Tried below before Hon. J. A. TEMPLETON, Special Judge.

*Flood, Hughes & Foster,* for appellant.

*L. T. Miller* and *R. Cobb,* for appellee.

STEPHENS, ASSOCIATE JUSTICE.—This suit was brought April 3, 1890, by appellee T. W. Daniels against appellants W. T. Waggoner and S. B. Burnett, to recover a tract of 308 acres of land located in 1886 by virtue of a confederate certificate for the benefit of the common school fund. Daniels deraigned title from S. P. Hawkins, who, as an alleged actual settler, purchased the land from the State in the year 1888, under the Act of 1887. Appellants were the several owners of the Samuel Anderson survey, patented in 1877, and had been in actual possession of the land in controversy, as a part of that survey, about five years when Hawkins undertook to purchase from the State.

The Samuel Anderson survey was located in the first instance by J. P. Earle, surveyor of the proper land district, on August 6, 1874. This location was office work, and the field notes called for the Keppler and Rivers surveys on the west and the C. T. R. R. Co. surveys 1 and 2 on the east. Nearly two years later Sam Green, then surveyor of the same land district, made out corrected field notes, upon which the land was patented, reading: "Beginning at the N. E. corner of Wm. Keppler's 640-acre survey in the S. B. line of the Wm. M. Rivers survey; thence south 1900 varas to Wm. Keppler's S. E. corner; thence east 1866 varas to west line of C. T. R. R. Co. No. 2; thence north 3670 varas to N. W. corner of C. T. R. R. Co. survey No. 1; thence east 1541 varas with north line of same; thence north 956 varas, a stake; thence west 2757 varas to aforesaid Rivers' east line; thence south 2726 varas with said line to his S. E. corner; thence west 650 varas to the beginning."

The principal difference between the corrected and the original work

consisted in the extension of the east and west calls between 300 and 400 varas. Whether this extension resulted from work done on the ground or was the result of a mere calculation, was a matter of inference, there being no positive evidence upon that subject. In applying the field notes to the ground, a conflict arises between these calls for distance east and west and the calls for the C. T. R. R. Co. surveys 1 and 2.

The location relied upon by appellee Daniels proceeds upon the assumption that the calls in the Anderson field notes for the C. T. R. R. Co. surveys 1 and 2 on the east were made by mistake, and that they should consequently yield to the conflicting calls for distance. The burden of proof, therefore, rested upon appellee Daniels of showing such mistake, and that in making the Anderson location a vacancy was left between it and said C. T. R. R. Co. surveys 1 and 2. Upon this theory he has twice prevailed in the trial court, the first verdict and judgment having been reversed on appeal, because contrary to the manifest weight of the testimony. 4 Texas Civ. App., 354; 23 S. W. Rep., 738.

It is now insisted, in support of the last verdict and judgment, that the evidence makes a different and stronger case than that presented on the former appeal. We are, however, inclined to the opinion that, after resolving all the conflicts in the evidence in favor of the verdict, it still stands opposed to the manifest weight of the testimony, in that we fail to find the slightest preponderance of evidence on the side of the finding that the calls for the surrounding surveys, rather than the calls for distance, were mistaken calls, and that a vacancy existed between the Anderson and the railroad surveys. If the evidence was equally balanced upon this the controlling issue, the appellants, defendants below, were entitled to a verdict.

It was evidently the purpose of Earle in making the original location of the Anderson survey to cover all vacant land between the Rivers and Keppler surveys on the west and the railroad surveys on the east, though all the lines and corners of these surveys called for by him were open and unmarked in the prairie. The same thing may reasonably be affirmed of Sam Green's work in correcting the field notes. Not a single object called for by him could be found upon the ground, except these open lines and corners of the surrounding surveys; and if he ever made a track upon the ground in measuring the distances, no trace of it could be found. He even lengthened the distance called for in the original field notes, thereby carrying out the purpose of the original locator to subordinate the calls for distance to the calls for the surrounding surveys, and omitted the call for the stake as given in the original field notes as the terminal of the distance there called for east to the C. T. R. R. Co. survey No. 2. The mere circumstance of excess in quantity is too common in locations calling for surrounding surveys to make out a case of mistake in such calls rather than in the calls for distance and quantity.

But, if this conclusion be erroneous, the judgment would still have to be reversed, on account of the error assigned to the following charge:

"You are instructed, that by the term actual settler in good faith is meant one who actually occupies and settles upon land intending to make it his home, and to constitute one an actual settler on school land, the person occupying the same must reside on it or must occupy it preparatory to and with the bona fide intention of thereafter removing upon and residing upon said land as his home." In so far as this charge instructed the jury that a person, without residing on school land, might nevertheless be an actual settler thereon, provided he occupied it "preparatory to and with the bona fide intention of thereafter removing upon and residing upon said land as his home," it was at variance with the rule laid down in the opinion of our Supreme Court in the case of Rusk v. Lowrie, 86 Texas, 128, and followed by this court in Borchers v. Mead, 43 Southwestern Reporter, 300, and Cordill v. Moore, Id., 298.

The issue thus erroneously submitted was a material one, since appellee's right to recover depended both upon the question of boundary and upon a superior right to the land in dispute, the appellants being defendants below, in the actual and prior possession of the land. As actual settlement was a condition precedent to the right of Hawkins to purchase the land, the suit was not maintainable without showing that fact. Metzler v. Johnson, 20 S. W. Rep., 1116; Hitson v. Glasscock, 21 S. W. R p., 710; Baker v. Millman, 77 Texas, 46.

The intervention in the name of the State did not prevent this error from being reversible, since the State failed to recover, and the appellants were entitled to the possession of the land, though vacant, against every claimant other than the State.

Very many other assignments of error have been submitted and considered, but we doubt if any of them ought to be sustained.

Upon the grounds indicated, however, the judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*