### ANDERSON v. SCHAEFER et al. (No. 2515.)

(Court of Civil Appeals of Texas. Amarillo. June 10, 1925.)

**1. Boundaries ⬤⟹33—Presumption that surveyor complied with law not overcome.**

Where there was no testimony that the survey was not made on the ground, excess in quantity and fact that field notes bear same date are insufficient to overcome presumption that surveyor complied with law and did his duty.

**2. Boundaries ⬤⟹3(5)—Call for distance yields to call for unmarked line of adjacent survey.**

Call for distance yields to call for unmarked line of adjacent survey, if location of unmarked line can be determined accurately from identified corners of adjacent surveys, provided position of unmarked line is so ascertained.

**3. Boundaries ⬤⟹37(3)—Facts held to show surveyor ascertained positions of unmarked lines and corners called for from identified positions.**

Facts *held* to show that surveys were made on the ground, and that surveyor ascertained position of unmarked lines and corners called for with certainty from identified positions.

**4. Boundaries ⬤⟹7—Beginning corner of survey held to be of no higher dignity than other corners thereof.**

Where surveys were made on ground, and surveyor ascertained unmarked lines and corners called for with certainty from identified positions, beginning corner is of no higher dignity than any other corner.

Appeal from District Court, Wichita County; H. R. Wilson, Judge.

Trespass to try title by J. E. Anderson against F. J. Schaefer and another, in which defendant M. B. Darnell disclaimed. Judgment for defendant, and plaintiff appeals. Affirmed.

G. B. Smedley, of Wichita Falls, for appellant.

Carrigan, Montgomery, Britain, Morgan & King, of Wichita Falls, for appellee.

JACKSON, J. This suit was instituted in the district court of Archer county, and by agreement of the parties transferred to the district court of Wichita County, Tex., for trial.

J. E. Anderson, appellant, sued F. J. Schaefer and Mrs. M. B. Darnell, a widow, in trespass to try title to the land described as follows: A survey of 127.5 acres made for J. E. Anderson by virtue of the statute providing for the sale of unsurveyed school land, with metes and bounds as follows:

Beginning at a point at center of road, 6 varas south of the southwest fence corner of Green Reynolds survey; thence north along west fence of Green Reynolds survey, crossing corner of fence to west at 736 varas, a distance of 847 varas for southeast corner of the Day Land & Cattle Company survey, being a point on Green Reynolds west fence line, and 1108 varas south of a point in center of east and west road, 11.5 varas north of Green Reynolds northwest fence corner; thence west with Day Land & Cattle Company survey's south boundary, 850 varas to southwest corner Day Land & Cattle Company survey; thence south 847 varas to the center of the east and west road on north line of Matthew Doyle survey No. 16; thence east along north line M. Doyle survey No. 16, passing road intersection at 152.5 varas, and crossing railroad 694.7 varas, a distance of 850 varas, to the place of beginning.

Mrs. M. B. Darnell disclaimed, and F. J. Schaefer, appellee, answered by general demurrer and a plea of not guilty.

It was agreed that appellant had been awarded the land in controversy as public school land by the commissioner of the general land office of the state of Texas, on or about March 18, 1920, and has title to said land if it was vacant when awarded, and that appellee has title to the northern part of the Harvey Cox survey, and claims the land in controversy was not vacant, but is a part of the portion of the Harvey Cox survey owned by him.

The case resolved itself into a boundary suit, and was tried before the court without a jury, and at the close of the testimony the court rendered judgment against appellant, and that appellee be quieted as against him in his title for costs, etc.

There are no findings of fact or conclusions of law in the record.

Appellant assails the action of the trial court in rendering judgment against him by four assignments of error, all of which, in effect, are that, because the Harvey Cox survey has no marked corners or lines, and is one of a block of surveys made by Dennis Corwin on September 21, 1874, it should be located by course and distance from the Fitzgerald survey on the west, and the calls in the field notes of the Harvey Cox survey for the unmarked lines and corners of adjoining surveys should be disregarded because the Corwin survey was an office survey, and its calls for the lines and corners of the adjacent surveys were made by mistake or conjecture, and by locating the Harvey Cox survey by course and distance from the northeast corner of the Fitzgerald survey on the west, the land sued for by appellant is no part of the Harvey Cox survey, and is vacant land.

Appellees' contention is that the Harvey Cox should be located by its calls for the lines and corners of surveys adjoining it on the north and east, made and located upon

⬤⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the ground before the survey of the Corwin block, and when so located there is no vacancy.

Below is a plat on which the land in controversy is designated D, and, while not drawn to an absolute scale, will assist in understanding the facts upon which the respective contentions are based:

The record does not disclose when or by whom the Shaw survey, nor the H. & T. C. Railway Company lands were made, but these lands were all located prior to the Corwin surveys.

William Hudson, in 1854, located Fitzgerald No. 1, Neil No. 2, Fanning No. 3, the Scott surveys Nos. 4, 5, 6, 7, and 8, and the Cherokee county school land in 1856. In 1871 E. Boen surveyed the J. R. McDowell, and in 1872 the Reynolds. In 1874 Dennis Corwin located surveys Nos. 11, 12, 13, 14, 15, and 16, which are included on the plat within the broken lines made of dots and dashes. The southwest corner of the Fitzgerald, designated A, the northeast corner of Scott No. 4, and the northwest corner of Scott No. 5, which is a common corner designated B, and the southwest corner of Scott No. 8, designated C, are original corners made by Hudson in 1854, and can still be identified on the ground, but no other line or corner in any adjacent surveys can be located except by course and distance from these identified positions; it thus appears that the Corwin system of surveys at the time of their location were surrounded by older surveys. The Cox survey has no original marked lines or corners, and this is true of all the block of Corwin surveys.

There is no question about the location of the surveys run out by William Hudson on the north and west, and none regarding the position of the Reynolds and McDowell surveys on the east. It is conceded that the Corwin surveys constitute a system, and should be located as a single survey or block. The record discloses that No. 10 calls to begin at the northwest corner of the Fitzgerald, which is 2688 varas north and 1344 varas east from A, the identified corner of the Fitzgerald; that the northeast corner of Scott 4 and the northwest corner of Scott 5, B, an identified corner, is 1446 varas from the southwest corner of 5, which is called for in the field notes of 14; that the field notes of the Cox survey call for survey 14, and for the south line and the southeast corner of Scott survey 6 and the east line and the northeast corner thereof in the south line of Scott survey No. 7, and also for the northwest corner of the Reynolds survey, which is 1400 varas from C, the identified corner of Scott survey No. 8; that there is 1400 varas excess distance in the eastings and westings between A, the southwest corner of the Fitzgerald and C, the southwest corner of Scott 8; that if the Cox survey is located by course and distance from A, it will be 1400 varas west and embraced in the dotted lines on the plat, and will not cover D, the land in controversy, but if located by the calls in its field notes for the unmarked lines of the adjacent surveys, the land in controversy designated D will be a part of the Cox survey and the property of appellee.

In the case of Maddox v. Fenner, 79 Tex. 291, 15 S. W. 237, the contention was "successfully made" that, unless the surveyor of the Stevens tract, the boundaries of which were in controversy, made a gross error in his calls for course and distance, he could not have embraced within said tract all the land between the adjacent surveys, the lines and corners of which were called for in his field notes of the Stevens survey—the excess being over 1900 varas. Notwithstanding the excess the court holds there is "no evidence that the lines of the Stevens and the adjoining surveys were not actually run. In the absence of evidence on the subject, the presumption must be indulged that the surveyors actually surveyed all of the lines called for."

To the same effect are the holdings in Steusoff v. Jackson, 40 Tex. Civ. App. 328, 89 S. W. 445; Weston v. Meeker (Tex. Civ. App.) 109 S. W. 461; Groesbeck v. Harris, 82 Tex. 411; Waggoner et al. v. Daniels et al., 18 Tex. Civ. App. 235, 44 S. W. 946.

[1] In the instant case, there is no testimony that the survey was not made on the

ground; the excess and the fact that the field notes of the Corwin surveys bear the same date are insufficient to overcome the presumption that the surveyor complied with the law and did his duty.

[2] A call for distance must yield to a call for an unmarked line of an adjacent survey, if the location of such unmarked line can be determined accurately from identified corners of adjacent surveys, provided the position of the unmarked line is so ascertained, because, when the position of an unmarked line is correctly determined and called for in field notes, it has the dignity of a call for an artificial object. In addition to the authorities, supra, see Matador Land & Cattle Co. v. Cassidy, Southwestern Commission Co. (Tex. Civ. App.) 207 S. W. 430; Goodson v. Fitzgerald (Tex. Civ. App.) 135 S. W. 696; Findlay v. State (Tex. Civ. App.) 238 S. W. 971.

In Findlay v. State, supra, the court says:

"Whether or not it ought to be presumed that a surveyor ran out an unmarked prairie line called for in his field notes, and thus ascertained its location upon the ground will depend upon the proximity of marked corners or lines from which such line could have been run. If they were near by and could have been ascertained with certainty, it is reasonable to presume that he ran out such prairie line."

The identified position B, the northeast corner of Scott 4, and the northwest corner of Scott 5 is 1446 varas from the southeast corner of Scott 4, which is called for in the field notes of survey 14, and the north line of 14 is made a common line with the south line of Scott 5, and a part of the south line of Scott 6, and survey 14 is called for in the field notes of the Cox.

The identified position C, the southwest corner of No. 8, is 1400 varas north of the northwest corner of the Reynolds, which is called for as a corner of the Cox, and 1400 varas north and 900 varas west from a point on the south line of Scott No. 7, called for as the extreme northwest corner of the Cox survey. The north part of the Cox east line is a common line with the west boundary line of the Reynolds, and the west boundary of the north part of the Cox is a common line with the east boundary of Scott No. 6. The field notes of the Cox also call for a common corner with the southeast corner of 6.

The unmarked corners and lines of the adjacent surveys called for in the Cox field notes could have been definitely ascertained from the two identified positions B and C by surveyor Corwin when he located the Cox survey, and it is reasonable to presume from the proximity of the identified positions B and C that he located such unmarked lines and corners from such identified positions, and consequently his calls for such unmarked lines and corners of the adjacent surveys are of equal dignity to a call for an artificial object.

[3, 4] From the facts as revealed by the record in this case, the court was authorized, as a basis for his judgment, to conclude that the Corwin surveys were made on the ground, and that the surveyor ascertained the position of the unmarked lines and corners called for with certainty from identified positions.

In this case the beginning corner is of no higher dignity than any other corner of the survey. Phillips v. Ayres, 45 Tex. 607; Cox v. Finks (Tex. Civ. App.) 41 S. W. 95; Ayers v. Harris, 64 Tex. 300; Rand v. Cartwright, 82 Tex. 403, 18 S. W. 796; Scott v. Pettigrew, 72 Tex. 329, 12 S. W. 161; Miles v. Sherwood, 84 Tex. 489, 19 S. W. 853.

Corwin calls to begin his system of surveys at the northeast corner of the Fitzgerald survey No. 1, which is 2688 varas north and 1344 varas east from A, the identified corner of the Fitzgerald, but this beginning call is of no more importance than the calls in the field notes of the Cox survey for the unmarked lines and corners of the older surveys adjacent thereto, and is a much greater distance from the Cox survey than the identified positions of B and C. In Waggoner et al. v. Daniels et al., 18 Tex. Civ. App. 235, 44 S. W. 946, the court says:

"The mere circumstances of excess in quantity is too common, in locations calling for surrounding surveys, to make out a case of mistake in such calls, rather than in the calls for distance and quantity."

The location of the Cox survey by calls and distance from the northeast corner of Fitzgerald 1 would place the northern part thereof in conflict with the older adjacent survey of Scott No. 6. It would destroy the configuration of said Cox survey, would leave a vacancy between the surveys surrounding the block of Corwin surveys, and separate the Cox from survey No. 16, or place survey No. 16 1400 varas west of its position determined by its call for the Reynolds and McDowell prior adjacent surveys.

Considering the presumption that it was not the intention of the surveyor to conflict with established surveys, that it was his intention to appropriate the unappropriated lands surrounded by the prior adjacent surveys, the proximity of the identified positions of B and C to the unmarked lines and corners called for in the Cox field notes, with other facts and circumstances appearing in the record, it is our opinion that there is no reversible error in the record, and the judgment is affirmed.