**LEAR et al. v. GRAEBER et al.**

No. 4315.

Court of Civil Appeals of Texas. El Paso.

Oct. 28, 1943.

Rehearing Denied Dec. 2, 1943.

Gerald C. Mann, Atty. Gen., Peter Maniscalco, Chester Ollison, and Cecil C. Rotsch, Asst. Attys. Gen., and George T. Wilson, of San Angelo, for appellants.

Davidson & Smith, of Ozona, John A. Braly and Burney Braly, both of Fort Worth, Baker, Botts, Andrews & Wharton and Walter Walne, all of Houston, and Collins, Jackson, Snodgrass & Blanks, of San Angelo (Harry D. Page, of Tulsa, Okl., Martin A. Row, of Dallas, R. Wilbur Brown, of San Angelo, and G. R. Pate, Ben G. Smith, and Myron A. Smith, all of Fort Worth, of counsel), for appellees.

PRICE, Chief Justice.

This is an appeal from a judgment of the District Court of Crockett County in a vacancy suit. The plaintiff, Everett T. Lear, claimed the right to purchase the three tracts of land as unsurveyed public school land. The State intervened, asserting, in accordance with the averments of plaintiff, that the three tracts involved were unsurveyed public school land, and subject to the application of the original plaintiff. The various defendants, among other defenses, plead not guilty. The trial was before the court without a jury, judgment was for the defendants, and the plaintiff has perfected this appeal.

Plaintiff Lear and the State will be hereinafter designated as "plaintiffs," and the parties adverse to them as "defendants."

The three tracts involved are situated in Crockett County and are alleged to be bounded on the west by the easterly lines of Blocks 1 and 2, Gulf, Colorado & Santa Fe Ry. Co., and on the east by the westerly lines of Blocks Q and FF.

The three tracts involved and the contentions of the plaintiffs relative thereto are illustrated by portions of a map incorporated in plaintiffs' brief. This map is here reproduced. The heavily shaded portions thereof represent the three tracts claimed as vacancies. This map further illustrates plaintiffs' theory as to the application on the ground of a survey of Blocks 1 and 2, Gulf C. & S. F. Ry., made by H. C. Barton in the year 1880.

Exhibit "A"
for this
brief

The substantial conflict between the parties to the case was as to where the easterly lines of the surveys composing Blocks 1 and 2 are located on the ground with reference to the westerly lines of the surveys constituting Blocks Q and FF.

H. C. Barton made the survey of Blocks 1 and 2, G. C. & S. F. Ry., in the year 1880. The survey was made on the application of Holt and Thomson. In the application the beginning point of the survey sought was the northwest corner of Block 29, University, which was the northwest corner of Survey No. 6, in said University Block. At the time of this application the land lying west and east of the area was unsurveyed. Block 29, University, had been surveyed in 1879 by R. M. Thomson, of the firm making application for the survey of Gulf, Colorado & Santa Fe Blocks 1 and 2. R. M. Thomson certified to the field notes returned to the General Land Office for University Block 29. Survey No. 1 of Block 29 calls to begin at

"The middle of the parade. ground at Fort Lancaster, from which the S. W. corner of the Fort bears S. 3 E. 133 vrs, and the N. E. corner of the Fort bears N. 3 W. 133 vrs., a tombstone with the following inscription, 'J. H. Norris a W. P. Lane Ranger from Marshall, Texas, died Nov. 19th, 1861, aged 24 yrs.' bears N. 38 E. 255 varas, thence N. 45 E. at 1160 varas pass stone md. at 4600 varas earth monument from which a cedar mkd. X brs. N. 62 E. 110 vrs."

Survey 1 is the most southwesterly survey in Block 29, and Surveys 2 to 6 are built successively north from No. 1.

■ There is strong evidence in the record as to the true location of the northwest corner of Block 29. This is to be found in the testimony of Surveyor George, a witness for defendants; further, in the almost contemporaneous surveys of S. A. Thompson in surveying Blocks FF and Q, and in his other former surveys of territory lying to the west of Blocks 1 and 2, G. C. & S. F. Ry. Co. In fact the evidence is rather convincing that surveyor S. A. Thompson, now dead, marked this corner by a rock monument. Surveyor George, in making the surveys upon which he based his testimony, identified this monument erected by Thompson. If Blocks 1 and 2, G. C. & S. F. Ry. be constructed from the true location of the northwest corner of Block 29, University, there is no

vacancy here. In that event, the east lines of the surveys constituting Blocks 1 and 2, G. C. & S. F. Ry., substantially coincide with the west lines of the surveys constituting FF and Q.

The plaintiffs contend that the Barton survey was on the ground, called for monuments, and there is evidence on the ground of the objects called for in the field notes. In short, that as a matter of law the testimony traced the foot steps of Barton on the ground. If this be correct, there is no question but that the east lines of the surveys are placed on the ground exactly where Barton's survey placed them. In short, if the work of appellants' witness Simpson be correct in retracing an actual survey made by Barton, the vacancy exists in part at least.

The testimony shows that the State has issued patents on some of the surveys along the lines in question, which, by their field notes, would in part cover up the alleged vacancy; that is, a part thereof. None of these patents have been set aside or sought to be set aside at the suit of the State.

If, in truth and in fact, Barton commenced his surveys west of what seems under the evidence to be the true northwest corner of University 29 at or substantially the point where surveyor Simpson locates a monument which he identifies as an original monument of the Barton survey, plaintiffs were entitled to recover a part at least of the alleged vacancies.

■ The field notes returned by Barton as to the blocks in question are signed by two chain carriers and certified to by Barton as surveys made on the ground. The certificate of Barton creates the presumption that the surveys were made on the ground. Booth v. Strippleman, 26 Tex. 436; Anderson v. Schaefer, Tex.Civ.App., 275 S.W. 300.

■ This was not a conclusive presumption, but could be rebutted by evidence. State v. Dayton Lbr. Co., Tex.Civ.App., 159 S.W. 391; Blaffer v. State, Tex.Civ. App., 31 S.W.2d 172, writ refused.

The findings of fact made by the court are as follows:

"1. I find that GC&SF RR Block 1, consisting of forty surveys numbered from 1 to 40, inclusive, in Crockett County, Texas, is shown by certified copy of Field Notes from the General Land Office of the

State of Texas to have been surveyed by H. C. Barton, Deputy Surveyor, Bexar District. Sections 1 to 22 are certified to have been surveyed on the 16th day of June, 1880. Sections Nos. 23 to 40 are shown to have been surveyed on June 17, 1880. The field notes show that on Sections Nos. 1 to 22 that there are nineteen stone mounds called for, and on Sections Nos. 23 to 40 there are eighteen stone mounds called for. There are numerous calls in the surveys in this Block for crossings of the Fort Lancaster-Grierson Springs Road and also for crossings of Live Oak Creek. This Block of land appears to be laid out on each side of Live Oak Creek. There is no distance given to any crossing on said road or on said creek in any of the surveys from any given point, and there is no bearing given to any object in any of the Field Notes of said forty sections of land although there is no section in said Block but what has one or more rock corners called for.

"2. I find that it would have been impossible for this forty sections of land to have been surveyed in two days, and I find that such fact and the further fact that no bearings for corners are called for and no distances given to any place of crossing of said road and creek indicates that said survey was not made on the ground.

"3. I further find that no one has ever been able to find or to locate satisfactorily any of the rock corners called for in the field notes to this block of land. In this connection I further find that there is now and has been, as far back as any one remembers to have looked for same, numerous rock piles scattered all over this block of land, none of which can be positively or reasonably identified as rock mounds placed there or found there by H. C. Barton in his survey in 1880.

"4. I find that at the time H. C. Barton surveyed this land he was reasonably well acquainted with the location of the West line of University Block No. 29 and that when he called for the beginning call of this Block 1, GC&SF RR Co. Survey to start at the Northwest corner of Section 6 of said Block No. 29, University Lands, that he knew where said corner was and could easily have located same and that it was his intention to locate said Section No. 1 in said Block No. 1, GC&SF RR Co. immediately and directly north of said Section 6, Block 29, University lands, and that he intended and did make the East line of

Sections Nos. 5, 10, 11, 16, 23, 24 and 35 of said Block 1, GC&SF RR Co., and Sections 1 and 8, Block 2, GC&SF RR Co. on the course and one mile East of the extension North of the West line of said Block No. 29, University Lands, and that thereafter when Block FF and other blocks on the East of said Blocks Nos. 1 and 2, GC&SF RR Co. Surveys called for a joinder to said Blocks Nos. 1 and 2, GC&SF RR Co. that they did in fact actually join the East line of said Blocks Nos. 1 and 2, GC&SF RR Co. Surveys leaving no vacancy or unsurveyed lands between the East line thereof and any of the surveys and blocks on the East thereof.

"5. I further find that from the evidence in this case that I am unable to find that H. C. Barton ever established any rock corners or found or located any rock corners as called for by him on said Block No. 1, GC&SF RR Co., and that he never surveyed any lines on the ground crossing either said Live Oak Creek or said Fort Lancaster-Grierson Springs Road.

"6. I further find that the Plaintiff, Everett T. Lear, and the Intervenor, the State of Texas, by and through its officers, the Attorney General of the State of Texas, and the Commissioner of the General Land Office of the State of Texas, on the trial of this case failed to establish by a preponderance of the evidence that there was or is any vacant land whatever in the territory described in the pleadings of each of them and in the Application for Survey (To Purchase) filed by the Plaintiff, Everett T. Lear, and as pleaded and introduced in evidence in this case."

■ If the evidence supports the findings of fact, there can be no question as to the correctness of the judgment rendered. Granting the correctness of the findings in substance that there was no survey on the ground, the only way to construct the surveys was from the nearest known and located point to which same were related. 7 Tex.Jur. p. 168, Sec. 38.

This would likewise be the correct method if there had been a survey on the ground, but all evidence thereof had disappeared, and the evidence was insufficient as to the location of the monuments constituting the survey.

If either one of the above premises reflected by the findings be correct, there was substantial evidence locating the true northwest corner of Block 29 at a point

far enough east of where same was located by plaintiffs' testimony as the actual starting point of Barton to completely cover up the alleged vacancies.

That there was an actual survey made by Barton the appellants rely in part on the certificate of Barton to that fact. As to what that survey actually was they rely in a large measure on the testimony of surveyor Simpson, corroborated in part by the testimony of surveyor Goodfellow and the survey made by him and a survey and report thereof made by County Surveyor Grimmer.

The field notes of Barton purported to describe what he did. The monuments he erected or adopted, if same can be located and identified, are direct and real evidence of what he did. Taking his field notes as a whole we think deducible therefrom is that he built the subdivisions of the two blocks in question, beginning with Survey No. 1, Block 1, in order. The exterior block lines were not first established. They arose from the exterior lines of the subdivisions of the block.

In part at least Surveyor Simpson deduced the survey, that is, the tangible evidence thereof, from the harmony of certain stone mounds with the descriptive calls in the field notes. It cannot be contended that the calls for the crossings of Live Oak Creek and the old road were other than descriptive calls. These field notes indicate that at some place in a 1900-vara line same crossed the creek and road. If these calls had been intended as an important factor in the delineation of the area and location of the land surveyed, distances from a designated locative point would, it seems fair to assume, have been given. Had these distances been given, such calls might have efficacy in locating the respective corners of the surveys forming the blocks in question, —might have strong corroborative weight in verifying or discrediting artificial monuments as part of the survey.

Beyond any question, there was considerable harmony between the field notes and the monuments which Surveyor Simpson accepted as the Barton survey. Surveyor George rejected these monuments as marking the Barton survey. He gave logical and convincing reasons for their rejection.

If we accept the map made by plaintiffs' witness Simpson as truly depicting the proper location on the ground of the surveys in question as made by Barton, the conclusion is inevitable that Barton was mistaken in his location of the northwest corner of Block 29, University. The field notes of Thomson dated December 31, 1879 called for a stone mound at the northwest corner of Survey No. 6, which was the northwest corner of Block 29. There is testimony that Barton probably participated in the survey of Block 29; further, a few weeks after Barton returned to the Land Office his field notes for Block 1, GC&SF RR Co., he filed field notes for four surveys lying immediately east of the surveys constituting Block 1. These four surveys will be designated as the "no-number block surveys." The beginning point of Survey No. 1 is designated as "S. E. corner of Survey No. 4, in Block No. 1, at a stone monument." Such beginning point is stated to be 1900 varas east and 1900 varas north of the northwest corner of Block 29, University. The southeast corner of Survey No. 4, Block 1, is the northeast corner of Survey No. 1, of Block 1. In the original Barton field notes of No. 4, the northeast and southeast corners are said to be each marked by a stake. If the field notes as to Survey No. 1 in the no-numbered block surveys are true and correct, he erected or adopted a stone monument indicating his then conception of where the northeast corner of Survey No. 1, Block 1 was located, and likewise his then conception of where the northwest corner of Block 29, University, was located on the ground.

S. A. Thompson, a short time subsequent, filed his field notes of Block FF. In his Survey No. 1 of such block he mentions and identifies this monumented corner as the locative call in his construction of Block FF. This, as to S. A. Thompson, has at least the quality of a declaration of a deceased surveyor; as to H. C. Barton, it has this quality, with the added weight of the fact that Barton, having surveyed Block 1, GC&SF RR Co., presumptively knew where same was located on the ground.

■ This testimony tends to impair the testimony of Simpson as to where Barton located the southwest corner of Survey No. 1, Block 1; further, it cast some doubt on the other monuments identified by Simpson as monuments erected by Barton. It is true, the surveys constituting Blocks 1 and 2, GC&SF RR Co., are interrelated. This being the case, the beginning point is not necessarily of greater importance than any other point definitely located as evidencing

the survey. In the last analysis, however, the ground enclosed by Barton's field notes, if an actual survey on the ground, depends upon where he located the northwest corner of University Block 29, the beginning of Barton's survey. This is the cardinal and controlling point in his survey. In fact, the northwest corner of Block 29 is the cardinal and controlling point, not only as to Blocks 1 and 2, but as to the subsequent surveys lying to the east and west thereof. The fifty-odd stone monuments called for as corners of surveys constituting Blocks 1 and 2 all bear relationship to the beginning point of the survey. The Barton field notes point out a means for the location of this beginning point independent of the monument said to mark same. No bearings are given as to any of the other fifty monuments said to mark corners of the survey constituting the blocks in question. In the location of this beginning point any relevant evidence has its value. Barton's survey does not necessarily have to be traced from its starting point, but it must be traced to its starting point. By this is meant its actual starting point, if there was a survey on the ground; if there was no survey on the ground, of course, its actual starting point is the true northwest corner of University Block 29.

■ There is some doubt cast upon the monument taken by plaintiffs as erected by Barton for the southwest corner of Survey No. 1, Block 1, GC&SF RR Co. The witness Owens' testimony tends at least to indicate this stone monument was not erected until 1924. Barton's survey was in 1880. However, even though this be true, it is not a conclusive circumstance. It might be this was erected by some other surveyor and yet truly mark Barton's true starting point. It was not incumbent upon plaintiffs to identify a monument marking the true starting point of Barton's survey,—it was only incumbent upon them to establish the point, whether marked or otherwise.

We come now to the question as to whether or not the other locative calls in the Barton field notes, taken in connection with certain other descriptive calls, locate the point of beginning of the Barton surveys at a point west of the northwest corner of Block 29 at a sufficient distance to create the vacancy in question here.

■ A monument or monuments are found on the ground in the relevant area. This monument does not, it is conceded, mark the northwest corner of University Block 29, the beginning point of the Barton survey. From this point measurements are made. In this process other stone monuments are found. A relationship between these stone mounds is assumed from the fact that they are consistent with certain descriptive calls in the field notes returned of the original survey. From this and the apparent age of the mounds it is assumed, as a necessary conclusion, that same were erected there by the original surveyor as a part of his survey. The establishment of these monuments, or some of them at least, as the original monuments is vital and essential to the establishment of the theory of plaintiffs. The descriptive calls in and of themselves are insufficient to locate any definite area. Barton calls for his survey to begin at the northwest corner of Block 29. It is fair to presume, we think, even though he marked the beginning point with a stone mound, that he placed same at the true northwest corner of Block 29, until the contrary appears from the evidence. The monuments identified by Simpson are inconsistent with the location of the surveys with reference to the true northwest corner of Block 29. The evidence heretofore briefly summarized we think indicates at least that Barton actually knew the true location of that point on the ground. A short time thereafter, in his four no-numbered block surveys, which are related to Blocks 1 and 2 and to Block 29, he adopted or established a locative corner consistent with the true location of the northwest corner of Block 29. His survey of Blocks 1 and 2 was a short time prior to the survey then made—so short, in fact, that impermanent evidence as to that corner may have then been in existence. A stone monument was found by both Simpson and George in substantial accordance with the stone mound erected or adopted by Barton as his corner of Survey —— of the no-numbered block surveys. If we resort to course and distance, it accords substantially with what appears, under the evidence, to be the true location of the northwest corner of Block 29.

Despite the numerous calls to cross Live Oak Creek and the road and the apparent consistency between the monuments when viewed in the light of the field notes returned by Barton, we deem the evidence insufficient to establish as a matter of law the stone mounds identified by Simpson as having been erected by Barton. We think there was evidence sustaining the finding

that there was grave doubt as to whether Barton ever surveyed Blocks 1 and 2 on the ground. Barton made only descriptive calls as to a natural object, Live Oak Creek, in his location of the survey. So, likewise, as to the artificial object which was of great permanency, that is, the road. No bearings were given to locate the stone mounds which were referred to for locative purposes. There is evidence that it was characteristic of his work that bearings were ordinarily given for monuments. The amount of work attested in the field notes, though not a conclusive circumstance, is entitled to consideration. There was evidence that it was Barton's custom when erecting monuments composed of small stones, to refer to them as pebble monuments, and that in the surveys here involved, several of the purported monuments were pebble mounds, but not referred to as such in the field notes. The field book of Barton, if available, would have been valuable evidence on the issue as to whether there was a survey on the ground. It, unfortunately, was perhaps unavailable to either party. There is evidence as to the apparent newness of some of the mounds which were claimed to have been the original mounds placed there by Barton. Surveyor George testified to this effect as to some of the stone mounds in the northerly portion of the area in question.

In view of all of these circumstances and the other circumstances appearing in evidence, the finding, in effect, that this was an office survey, is not without support in the evidence. Further, this same evidence sustains the finding that if Barton did make his survey on the ground, the evidences thereof have disappeared, or, in any event, cannot be located.

These two findings of the trial court were largely the basis of the judgment entered. We cannot say that there is a want of evidence to sustain them. There is no manner of doubt that in either event, the survey should be located from the northwest corner of Block 29, University. There was ample, though not conclusive, evidence as to the true location of this point. If the construction of Blocks 1 and 2 be from what the trial court manifestly found to be the true location of this point, there is no vacancy. This location accords with the official map of Crockett County. It is in harmony with the location of the junior surveys to the east and west of the blocks in question; in substantial harmony with the subsequent patents issued by the State, the field notes thereof being applied to the area described in such patents. These patents stand unchallenged by the State, and have so stood for a considerable length of time.

A careful consideration of the evidence as a whole leads us to the conclusion that there was substantial evidence sustaining the findings of the trial court.

It is ordered the judgment be in all things affirmed.

WALTHALL, J., not participating.