LEONE PLANTATION, Inc., v. ROACH et al.

No. 2621.

Court of Civil Appeals of Texas. Waco.

May 3, 1945.

Rehearing Denied May 24, 1945.

Seale & Seale, of Centerville, and Locke, Locke, Dyer & Purnell and McGillivray Muse, all of Dallas, for defendant.

Bennett & Bennett, of Normangee, J. R. Murray, of Houston, and Robert E. Burroughs, of Centerville, for appellees.

RICE, Chief Justice.

This is a boundary suit brought in the form of trespass to try title.

Leone Plantation, Inc., plaintiff below, appellant here, is admittedly the owner of the Hairston Survey of 640 acres situate in Leon County, Texas; appellee Austin Roach, vendee of appellee Keechi Petroleum Company, is admittedly the owner of the McLin Bracy Survey immediately west of the Hairston.

■ The land in controversy is a rectangular tract of 123 acres asserted by appellant, plaintiff below, to be a part of the Hairston Survey. Appellant, by its pleadings, undertook the burden of establishing that the west line of the Hairston was the west line of the tract in controversy. To meet this burden it was incumbent on appellant to locate the true west line of the Hairston by re-tracing the footsteps of A. Ketchel (also referred to in the record as A. Kitchie), the original surveyor, in locating said survey.

The case was tried to a jury on special issues. Appellant filed no motion for instructed verdict; it made no objection to the manner or form of the submission of the issues; it made no motion for judgment non obstante veredicto. Two of the submitted issues were so answered by the jury that, under the court's instructions, answers to the remaining issues were not required. The issues so answered are as follows:

(1) "Which line do you find to be the true west line of the Richard Hairston Survey as located by A. Ketchel in 1840?

"Unless you find from a preponderance of the evidence that the true west line of the Richard Hairston Survey as located by A. Ketchel in 1840 runs along the west line of the land in controversy, you will answer such issue: 'The line running along the east line of the land in controversy.'

"Answer: The line running along the east line of the land in controversy."

(2) "Do you find from a preponderance of the evidence that the defendant, Austin Roach, and those under whom he claims and holds, either in person or through tenant or tenants, have held under fence or fences enclosing the same, peaceable and adverse possession of the land in controversy, using or enjoying the same for any period of ten consecutive years prior to April 12, 1943?

"Answer: Yes."

Judgment was rendered for appellees on the verdict of the jury. Appellant before this court takes the position that judgment should have been rendered for it as a matter of law because it says the jury's verdict was without support in the evidence and was contrary to the undisputed evidence; and, in the alternative, that the judgment should be reversed and the cause remanded because of the insufficiency of the evidence.

As stated above, appellant undertook to establish from a preponderance of the evidence that the true west line of the Richard Hairston Survey as located by A. Ketchel in 1840 was the line running along the west line of the 123 acres of land in controversy. The court, without complaint on the part of appellant, thus submitted the issue to the jury, and the latter's finding of fact was adverse to appellant. After considering special issue No. 1 as submitted, together with the trial court's instruction in respect thereto, it appears to us that the jury concluded that appellant had not discharged the burden imposed upon it of establishing by a preponderance of the evidence that the true west line of the Richard Hairston Survey as established by A. Ketchel in 1840 was the west line of the land in controversy, and therefore, in obedience to the trial court's instructions, answered said issue in favor of appellees.

■ Since appellant did not file any objection to the manner or form of the submission, did not request a peremptory instruction and filed no motion for judgment non obstante veredicto, there is some question as to its right to here insist that it is entitled to have the judgment of the trial court reversed and rendered. Be this as it may, if appellant did not, as a matter of law, establish its contention as to the true location of the line in controversy, then it was the jury's province to determine whether appellant had established its contention from a preponderance of the evidence.

Notwithstanding the question above raised, we have carefully reviewed the record in this cause, and have reached the conclusion that the judgment of the trial court should be affirmed because the appellant did not, from the evidence, as a matter of law establish the true line of the Richard Hairston Survey, as located by A. Ketchel in 1840, to be the line running along the west side of the land in controversy; and because we cannot say, from the record as a whole, that the jury's finding that appellant had not established its contention

from a preponderance of the evidence is without support in the record.

In order that the matters under discussion may be better understood, we are attaching to this opinion a map, not drawn to scale, of the land in controversy as well as of other closely related surveys. The 123 acres of land here involved is bounded by the lines connecting points A, B, C and D. Appellant contends that the west line of the Hairston is along line C–D.

Hairston; and that the southeast and the southwest corners of the Hairston are the northeast and northwest corners of the Chappell. It also shows the Hairston east line to be the west line of the W. D. Morey; and that an extension of the north and south lines of the Morey form the north and south lines of the Hairston. The east line of the Hairston extended north is shown to be the east line of the E. Higdon; and extended south to be the east line of

A summary of appellant's evidence is hereinafter set forth. A portion of the State map of 1873, showing a portion of Leon County, was introduced in evidence. Thereon the surveys under discussion appear in the same relative positions as on the map embodied in this opinion. Therefrom it appears that the T. Irwin, W. Chappell, R. Hairston and E. Higdon Surveys have a common west line, and that this line is the common east line of the J. B. Grumbles, the A. Anderson and the McLin Bracy Surveys. Said map shows the north line of the Chappell to be the south line of the

the Chappell and of the T. Irwin Surveys. It thereon appears that the south line of the Chappell, extended in a westerly direction along its course, is the south line of the Grumbles Survey.

A copy of the fieldnotes of the Richard Hairston Survey, certified by the General Land Office, was introduced in evidence and read as follows:

"Robertson County, April 22d 1840.

"Survey for Richard Hairston of 640 acres of land situated on the Keechi Trace North of the Buffalo Creek, being the quan-

tity of land to which he is entitled by virtue of Certificate No. 298 issued by the Board of Land Commissioners for the County of Washington Jany 4th 1839.

"Commencing at a post the N W corner of 640 acres in the name of W. D. Morey from which a black jack bears N 20 E 14 & a black jack S 40 E 10 vs.

"S 67 W 1900 — Thence running S 67 W 1900 vs to a post in prairie crossing a creek at 620 vs course E 3 vs wide.

"S 23 E 1900 — Thence S 23 E 1900 vs to a post from which a hickory bears S 4 W 10 vs & a black Jack N 80 W 6 vs.

"Thence N 67 E 1900 — Thence N 67 E 1900 vs to post from which a black J bears N 54 W 17 & a black jack S 50 E 21 vs.

"N 23 W 1900 — Thence N 23 W 1900 vs to the place of beginning. Hickory Blackjack Post Oak Black Oak & cr.

"John Dodd :
"Jos. Dodd : S. C. C.
A. Kitchie D. S. R. C.

"I Aaron Kitchie do solemnly declare under the oath of my office that the foregoing survey was made accd to law and that the *boundars bench* marks notice & ——— on County Records in the platt & *fild* notes and that the survey was made on the first day of Agst 1838.

"A. Kitchie D. S.

"I certify that I have examined the foregoing field notes & find them correct and the survey made according to law. Given at Franklin the 28th day of Sept. 1840.

"Edwin L. Kay Patton County
"Surveyor for Robertson County.
"Recorded Book F page 144."

A similarly certified copy of the fieldnotes of the McLin Bracy Survey was introduced. These fieldnotes are likewise headed by the date April 22, 1840. The beginning point is a post at the northeast corner of a survey of 1280 acres made for Wm. Brooks. The McLin Bracy is described as a square section, each of its parallel sides being 1900 varas in length, their course being N. 23 W. and S. 67 E. In his certificate to these fieldnotes Kitchie states that said

survey was made since the "fort" day of August, 1838. The call for the northeast corner of the Brooks is the only call for adjoinder.

A certified copy of the fieldnotes of the William Brooks Survey was introduced. These fieldnotes are dated April 22, 1840, were made by A. Kitchie and he certified that the survey was made since the first day of August, 1838. The fieldnotes of the Brooks Survey of 1280 acres call' to commence at the northwest corner of the T. Irwin Survey and thence N. 23 W. 2688 vrs. for northeast corner. Other than the call for the T. Irwin northwest corner, there is no call for adjoinder in the fieldnotes of the Brooks, nor did the same contain any passing calls for creeks. The Brooks Survey was afterwards lifted and thereafter replaced by the Grumbles, the Anderson and the Archer Surveys.

A certified copy of the fieldnotes of the William Chappell Survey was introduced. They are dated April 22, 1840, and are signed and certified by A. Kitchie as "made this first day of August, 1839." Said fieldnotes called to begin at the northeast corner of the T. Irwin. The courses and distances of the lines of this survey are the same as those of the T. Irwin and of the Richard Hairston Surveys; and like the last two mentioned surveys, the William Chappell is a square containing 640 acres. Its fieldnotes do not contain any call for adjoinder except at the northeast corner of the T. Irwin; and there are no passing calls for creeks or other natural objects. The fieldnotes do call at its northeast corner for two bearing trees, "a black jack bears N. 54 W. 17 and a black jack S. 50 E. 21 vrs." The fieldnotes of the R. Hairston copied above, call, at its southeast corner, for the same kind of trees on the same course and at the same distance.

From a certified copy of the Thomas Irwin fieldnotes it appears they are dated April 22, 1840, are signed by A. Kitchie, and are certified by him to have been made since the first day of August, 1838. These fieldnotes contain passing calls for creeks in the south and west lines of said survey, but do not call for adjoinder except at its beginning point (southwest corner of Irwin) in the northeast corner of a league surveyed for R. Whitmore.

The William Brooks was abandoned or lifted and S. G. McLendon, surveyor, laid out the John Grumbles Survey of 640 acres on the south half of the Brooks. These

fieldnotes are certified to have been made on October 14, 1853. The call for beginning is at the northwest corner of the T. Irwin Survey; there is a passing call for creek in the north line; a call for northwest corner in a line of the L. Burns, and a call for the southwest corner to be the southeast corner of said Burns Survey, and there is also a passing call for a creek in the south line of said survey. The same surveyor, on the same day, laid out 320 acres for Abram Anderson. His fieldnotes call for beginning point as the northeast corner of the Grumbles on the west boundary line of the William Chappell, and places this survey in the northeast quarter of the lifted Brooks Survey. These fieldnotes call for the southwest corner of the Anderson to be in the north line of the Grumbles and contain a passing call for a creek in the south line. There is no call for adjoiner with either the McLin Bracy on the north or the R. Hairston on the east.

Plaintiff introduced in evidence a deed dated January 2, 1893, from J. D. Patrick et al. to S. A. Johnson, conveying 120 acres of land out of the northeast corner of the William Chappell Survey, wherein the northeast corner of said Chappell Survey is described as being on the north side of a glade.

H. B. Allison, surveyor of Leon County, a witness for plaintiff, testified at length. Only a brief summary of his testimony can be set forth in this opinion.

In beginning his survey of the area under discussion, Allison started at a point which he assumed was the northeast corner of the Chappell. At this point there was a fence corner made by a fence running S. 23 E. and a fence running S. 67 W. From the assumed northeast corner of the Chappell, Allison ran a line S. 67 W. for the distance called for in the Chappell fieldnotes (1900 vrs.) for its northwest corner and at such point he found no witness trees but did find a marked line running N. 23 W. and S. 23 E. Thereafter Allison went to a fence corner pointed out to him as the northwest corner of the Grumbles Survey. He there found a fence running N. 23 W. and S. 23 E. and another running S. 67 W. and N. 67 E. At this point he searched for but failed to find any witness trees. From the aforesaid fence corner Allison then ran a line N. 67 E. 2719.8 vrs. along a marked line crossing a creek at 702 vrs. S. 67 W. from the end of this line. At said point reached by him at 2719.8 vrs.

he searched for but found no witness trees but did find stumps which he believed were the stumps of the original witness trees called for by the fieldnotes of the Grumbles Survey at its northeast corner, because they fitted the calls for course and distance of the witness trees. At this point there was a fence running northeast and southwest as the line ran; also a line running N. 23 W. and S. 23 E. intersecting at a right angle the line run by him. Allison then turned S. 23 E. along a marked line for the east line of the Grumbles. He ran this line 1349 vrs. and there found a marked line and fence running N. 67 W.; a fence running N. 67 E.; and also a marked line with fence running S. 23 E. He also found a concrete marker about 5 varas N. 43 degrees 45 minutes West from said point, and two marked witness trees near the monument. From this point he turned S. 67 W. and ran a line 2719.8 vrs., along which he found no marks. At the end of this line he found nothing to indicate the southwest corner of the Grumbles. From this point he ran a line N. 23 W. 1344 vrs. and came to his original starting point at which he found no witness trees. Thereafter (1942) Allison was employed to trace the southwest lines of the Wm. Chappell and of the R. Hairston Surveys. In doing this work he began at the northeast corner of the Grumbles, which he had previously located as above set forth, and ran a line N. 23 W. expecting to find along this line the northwest corner of the William Chappell, the northeast corner of the A. Anderson and the northwest corner of the R. Hairston Survey. From the northeast corner of the Grumbles, Allison ran a line N. 23 W. 590.7 vrs., expecting to find the southwest corner of the William Chappell, but failed to find it. He then picked up his instruments and went to the northwest corner of the Johnson 120 acre tract, which by a previous survey he had located as being 826 vrs. S. 67 W. from its northeast corner. This latter corner he assumed to be the northeast corner of the Chappell. From the northwest corner of the Johnson tract, which he assumed to be in the north line of the Chappell, he ran a line N. 67 W. 1104 vrs. and there cut the line he had run N. 23 W. from Grumbles' northeast corner. At this point he found no witness trees. In running this line he came, at 572 vrs. S. 67 W. from the Johnson northwest corner, to a cross fence running N. 23 W. Along this portion of the line he found marks and parallel fences; from that point forward

he found no marks or fences. He testified that adding the length of the Johnson north line (826 vrs.) to the distance of 1104 vrs. run by him N. 67 W. from the Johnson northwest corner, was a total of 1930 vrs., the length of the Chappell north line.

From where his line running N. 30 W. from the northeast corner of the Grumbles at 590.7 vrs. intersected his line running N. 67 W. 1104 vrs. from northwest corner of the Johnson tract (which he tentatively staked as the northwest corner of the Chappell) Allison ran a line N. 23 W. 1346.6 vrs. from the northwest corner of the Grumbles (755.9 vrs. from his tentative location of the northwest corner of the Chappell) through timbered country along a marked line, expecting to find the northeast corner of the A. Anderson Survey, but did not find it. He did find that he was in the center of a lane 20 feet wide. He continued his line N. 23 W. 1266.8 vrs. from said last mentioned point (2613.4 vrs. from the Grumbles' northeast corner), finding some marked trees, and at said distance he found a fence running S. 67 W. and N. 67 E. At this point he stopped and set a stake for tentative northwest corner of the Hairston. Allison's reason for stopping at this point was that the Hairston fieldnotes called for a post in a prairie at its northwest corner, and this point was the first indication of a prairie that he had reached. It was a glade running southwest and northeast about 150 feet wide and grown up in shrubs, and in other places there was water in it. From this stake in the glade, Allison then proceeded with the fence N. 67 E. 556 vrs. and there intersected a fence running N. 23 W. and S. 23 E. In his testimony Allison referred to this point as the corner made by three fences. His reason for going to this point was that "rumor had it there was a fence corner at the northwest corner of the Hairston survey." From this point he followed the fence running N. 23 W. for a distance of 99.7 vrs., and there struck another fence running N. 67 E., but not extending S. 67 W. from said point of intersection. At 556 vrs. S. 67 W. from said last mentioned point, and at 99.7 vrs. N. 23 W. from the stake he had set in the glade, Allison set a stake in a field which appeared to him to have been cleared, he saw no stumps. Allison searched for but failed to find any witness trees at the corner made by the "three fences" referred to above. This fence corner was in timber estimated to be 100 years old; it was on a hillside

sloping southwest, with sandy, natural top soil.

In 1943, Allison resumed his work and began at the point 99.7 vrs. N. 23 W. from the point on the hillside where the three fences came together because the fieldnotes of the Hairston called for a "creek course E. 3 vrs. wide" 620 vrs. N. 67 W. from the northeast corner of the Hairston Survey, and witness thought that locating the creek would assist him in locating the northwest corner of the Hairston. From said beginning point he ran a course N. 67 E. along what he termed the upper line of the Hairston along a fence line and marked line for a distance of 637 vrs. or 1193 vrs. from the stake in the field, which stake was N. 23 W. 99.7 vrs. from the stake he had set in the glade. At this point he turned at a right angle and paced off 100 varas to what he termed the lower line of the Hairston and there found a creek 3 or 4 varas wide running in an easterly direction. He extended the line which he had run with the fence on the course N. 67 E., along what he termed the Hairston upper line, to a total distance of 1930 varas from the stake in the field (or 1374 varas from the point N. 23 W. 99.7 varas from the fence corner made by "the three fences") in a search for the northwest corner of the Morey, the same being also the northeast corner of the Hairston. At the end of this line he said he found "plenty" of timber and that the fence as well as the marked line continued on a course N. 67 E. He found no corners there or witness trees, and quit.

The witness further testified that in his opinion the northwest corner of the Hairston and the southwest corner of the Higdon, although described in the fieldnotes of the Higdon as doing so, did not coincide but were about 100 varas apart; and that the Higdon and Hairston were probably 100 varas apart with the south line of the Higdon and north line of the Hairston parallel.

On cross-examination Allison testified that he did not survey all of the McLin Bracy Survey, nor all of the Richard Hairston Survey, as it was originally surveyed; nor did he run around the W. D. Morey Survey. He further testified that there was a fence running N. 67 E. from the northeast corner of the Grumbles Survey, but he did not investigate to see whether there was a fence east of the northeast corner of the Grumbles. He further

testified that he never did find the northeast corner of the Hairston and that he did not find the northwest corner as a marked corner. He testified that he did not find any corner of the Hairston, or the Chappell, or the Higdon, or the Morey, which he could identify as a marked corner. He further testified that he did not run the east line of the Hairston as a line; that he did not know and was not prepared from actual survey to testify where the line between the Hairston and Morey surveys was.

He further testified that there was no fence on what he concluded to be the east line of the Anderson Survey but there was a fence some 500 varas east of the Anderson running N. 23 W. across the remaining part of the Chappell and Hairston Surveys, and that the line run by him for the west line of the Chappell and Hairston Surveys was west of a fence line. He further testified that from the stake in the glade, fixed by him as the northwest corner of the Hairston, he did not run a line N. 67 E. with his instrument and chain along what he thought was the north line of the Hairston but that he walked it. He found no marks on this line.

█ In the leading case of Stafford v. King, 30 Tex. 257, 94 Am.Dec. 304, the rule was laid down that in the identification of the actual survey, as made by the surveyor, the footsteps of the surveyor must be followed. It was further held in that case that until the reverse is proved it will be presumed that the surveyor performed his duty and ran around the land embraced in the survey and the patent. It is also the general rule that a surveyor is presumed to have gone to the corners and lines his field-notes call for. State v. Sullivan, 127 Tex. 525, 92 S.W.2d 228, 232; Boon v. Hunter, 62 Tex. 582; Anderson v. Schaefer, Tex.Civ.App., 275 S.W. 300, point p. 301.

█ "Every rule of evidence laid down for guidance in boundary questions is for the purpose of ascertaining the true location of the line in dispute, by which is meant the place at which the original surveyor ran the line. After 90 years have elapsed and time has destroyed in large measure the evidence left by the original locater, it is then permissible, not only permissible, but of necessity is required, that we resort to any evidence tending to establish the place of the original footsteps, which meets the requirement that it is the best evidence of which the case is suscepti-

ble." Taylor v. Higgins Oil & Fuel Co., Tex.Civ.App., 2 S.W.2d 288, 300, writ dis.

█ A call for adjoinder is ordinarily given controlling effect over a call for course and distance, except where it is proved that the call for adjoinder was made by conjecture or by mistake. Blake v. Pure Oil Co., 128 Tex. 536, 100 S.W.2d 1009; Magnolia Petroleum Co. v. Jones, 138 Tex. 67, 158 S.W.2d 548; Camp v. Gulf Production Co., 122 Tex. 383, 61 S.W.2d 773, 782; State v. Sullivan, 127 Tex. 525, 92 S.W.2d 228.

█ It has been held that "distances called for between corners to creeks or roads, unless specially designated in such manner as to show the intention to make them locative, are not such, and will not ordinarily have precedence over a call for course and distance." Jones v. Andrews, 72 Tex. 5, 9 S.W. 170, 174; see also, Cockrell v. Work, County Surveyor, et al., Tex. Civ.App., 94 S.W.2d 784.

█ It is also the rule that senior surveys control junior surveys, Houston Oil Co. of Texas v. Brown, Tex.Civ.App., 202 S.W. 102, err. ref.; State v. Talkington, Tex.Civ.App., 274 S.W. 314; and that boundaries of senior survey cannot be extended or varied to satisfy calls of junior survey, Garcia v. State, Tex.Civ.App., 274 S.W. 319. It has also been held that when the north line of a junior survey was called to be identical with the south line of a senior survey, the proper location upon the ground of the south line of the senior survey, regardless of where it may be, would be conclusive of the location of the division line between the surveys. Southern Pine Lumber Co. v. Whiteman, Tex.Civ. App., 163 S.W.2d 212, err. ref.

In the case of Anderson v. Schaefer, Tex.Civ.App., 275 S.W. 300, point page 302, it was held:

"A call for distance must yield to a call for an unmarked line of an adjacent survey, if the location of such unmarked line can be determined accurately from identified corners of adjacent surveys, provided the position of the unmarked line is so ascertained, because, when the position of an unmarked line is correctly determined and called for in field notes, it has the dignity of a call for an artificial object." Citing: Maddox v. Fenner, 79 Tex. 279, 15 S.W. 237; Steusoff v. Jackson, 40 Tex.Civ.App. 328, 89 S.W. 445; Weston v. Meeker, Tex.

Civ.App., 109 S.W. 461; Groesbeck v. Harris, 82 Tex. 411, 19 S.W. 850; Waggoner et al. v. Daniels et al., 18 Tex.Civ.App. 235, 44 S.W. 946; Matador Land & Cattle Co. v. Cassidy, Southwestern Commission Co., Tex.Civ.App., 207 S.W. 430; Gooson v. Fitzgerald, Tex.Civ.App., 135 S.W. 696; Findlay v. State, Tex.Civ.App., 238 S.W. 956.

As stated above, appellant had the burden of locating the true west line of the Hairston Survey by retracing the footsteps of A. Ketchel, original surveyor, in locating said survey. The jury, by the effect of its answers, found that appellant had not carried its burden. Applying the rules of law above set forth to the material evidence introduced by appellant leads us to the conclusion that appellant did not establish the true west line of the Hairston Survey as a matter of law; and to the further conclusion that if appellee had introduced no evidence appellant's evidence was not of such clear, probative force that we would be justified in finding that the jury failed to discharge its duty in answering the submitted special issues adversely to appellant.

From the certificates of A. Ketchel it appears that he surveyed the Hairston Survey on August 1, 1838; that he surveyed the McLin Bracy since the "fort" day of August, 1838; that he surveyed the Wm. Chappell the first day of August, 1839; and the Thomas Irwin since the first day of August, 1838. It appears therefore that the Hairston, in point of the date of survey, was senior to the Irwin, the Bracy and the Chappell Surveys. Since the Hairston calls for its beginning point to be the northwest corner of the Wm. O. Morey Survey, it is to be presumed, we think, that the Morey was senior to the Hairston Survey, and therefore that the call for adjoinder to the Morey at its northwest corner contained in the field notes of the Hairston controls and fixes the true location of the beginning point of the Hairston if it were possible to locate, on the ground, the true northwest corner of the Morey as fixed and established by the original surveyor. Although evidence of the true location of the northwest corner of the Morey would have been the best evidence of the location of the northeast corner of the Hairston, neither the field notes nor the patent of the Morey were introduced in evidence. There is no evidence as to when or by whom the Morey was originally surveyed; there was no testimony that the true lines of the Morey as originally surveyed could not be located on the ground. The effect of the testimony of appellant's surveyor was that he made no substantial attempt to locate the true lines of the Morey; that he did not run the east line of the Hairston; that he did not survey all of the McLin Bracy Survey; that he did not locate any corner of the Hairston, or the Chappell, or the Higdon, or the Morey, which he could identify as a marked corner.

There is no evidence in the record that the lines of the Morey were not actually run at the time that it was located; nor that Ketchel did not run the lines of the Hairston as certified by him. In the absence of such evidence it must be presumed that the surveyor actually surveyed all the lines called for. Since Ketchel, in describing the Hairston, called for the northwest corner of the Morey as the beginning point, it must be further assumed, we think, that he knew where that corner was situated. Maddox v. Turner, 79 Tex. 279, 15 S.W. 237. Without alluding to or discussing the evidence introduced by appellees, we are of the opinion that the evidence of appellant, for the reasons above set forth, is not so certain and conclusive as would justify us in reversing the judgment of the trial court.

We have carefully considered each of the points presented by appellant and have concluded that each of them should be overruled. The judgment of the trial court is affirmed.